1830.

Marsellis
v.
Thalhimer.

---

## MARSELLIS *vs.* THALHIMER and others.

An unborn child after conception is to be considered in esse for the purpose of enabling it to take an estate, or for any other purpose which is for the benefit of the child if it should afterwards be born alive.

But, as it respects the rights of others claiming through the child, if it is born dead, or in such an early stage of pregnancy as to be incapable of living, it is to be considered as if it never had been born or conceived.

Where the mother dies before the birth of the child, and the latter is delivered by the cæsarean operation, it is considered in existence before its birth for its own benefit to take the estate of the mother by descent, but not for the benefit of the father to enable him to hold as tenant by the the curtesy.

Children born within the first six months after conception are presumed to be incapable of living, and therefore cannot take and transmit property by descent unless they actually survive long enough to rebut that presumption.

The party who claims property through the child is bound to establish the fact that it was born alive; and if the child never breathed there is no legal presumption in favor of the fact.

THIS was an appeal from the sentence and decree of the surrogate of Rensselaer county, on the settlement of the account of the administration of the estate of Gilbert Marsellis deceased. The only question presented for the decision of the surrogate or of this court was whether the appellant, the

Feb. 16th,

1830.

Marsellis
v.
Thalhimer.

widow of the intestate, was entitled to the whole or only one half of the personal estate, under the statute of distributions. At the death of the intestate he had no children, but the proctor for the appellant insisted that she was entitled to the whole estate; to one third thereof as the widow and to the residue as the mother of a child of which she was ensient at the time of her husband's death. From the testimony before the surrogate, it appeared that about two months after the death of her husband the appellant was delivered of a full grown child, which never breathed. No proper means were used to resuscitate the child, so as to enable medical men to determine whether it could have been resuscitated after its birth.

J. D. Willard & S. C. Huntington, for the appellant, contended that the child having been born, the presumption was that it was born alive until the contrary was proved, and that the onus probandi in this respect lay upon the appellees; that the weight of testimony establishes the fact that the child was born alive; that a child in ventre sa mere was a life in being to all intents and purposes, either as it regarded its own benefit or that of other persons, except in the case of a descent at common law. In support of these positions the counsel cited Thelusson v. Woodford, 4 Ves. 227, 293, 4, 5, 6, 7, 308, and the cases referred to in note 1 to that case, p. 227; the opinion of Justice Buller at p. 322, 3 and 4; the opinion of the master of the rolls at p. 334. 5 and 6; and Toller's Law of Executors, 31, 300.

Lansing & Frothingham, for the appellees. The appellant in order to recover the whole of the personal estate must shew the birth of an heir capable of inheriting. To enable a child to inherit, it is necessary that it should be born alive, and proved so to be born alive; for mortuus exitus non est exitus. (1 Beck's Medical Jurisprudence, 175.) The proof necessary to establish this fact, is clearly laid down in the cases of tenant by the curtesy, where, to enable the tenant to take, it must be proved that the child was heard to cry, and that by those who actually heard it, and not by those who learned it by hearsay. (1 Cruise on Real Prop-

erty, p. 112, tit. 5, ch. 1, s. 20. 2 Black. Comm. 127. 1 Beck's Med. Jurisprudence, 172, 175.)

In this case the proof is positive that the child was born dead. Both the women who were present swear positively that the child was born dead; the first, because it was born with its mouth open, and the second because she did not see it breathe. And the existence of the first of these symptons and the absence of the other are stated by a very eminent writer on medical jurisprudence as strong evidence of the child's being born dead. (1 Beck's Med. Jurisprudence, 248.) The same writer states that "Still born infants, or those who die instantly on being delivered, are not unfrequently observed to open their mouth, &c.; may not these be merely the relaxation of a contracted muscle or the stimulus of atmopheric air on a body unaccustomed to it?" &c. (1 Beck's Medical Jurisprudence, 177.)

By the law as it regards a tenant by the curtesy it is necessary that there should be issue born alive, which was capable of inheriting, &c. (1 Beck's Medical Jurisprudence, 175.) It cannot be contended that there is any ground to consider this as a child born alive.

It then becomes necessary to examine, 1. What rights are acquired by a child previous to its birth and while in its mother's womb? A child in ventre sa mere is, for many purposes, supposed in law to be born: it is capable of being a legatee, of receiving the surrender of a copy hold, and it may have a guardian appointed, &c. (1 Black. Comm. 130, n. 9.)

We contend that in all these and the other cases cited from the books, the taking of the child is for its own benefit solely, and on the condition of its being born alive.

Lord Hardwicke, in 2 Atkyns, p. 117 and 118, says: "The occasion of making the statute of distribution is stated at large in Edwards and Freeman, and I now take it to be fully settled that this act is to be construed by the rules of the civil law, &c.; and as to the civil law, nothing is more clear than that this law considered a child in the mother's womb absolutely born to all intents and purposes, for the child's own benefit." The case just cited was one under the English statute of distributions, of which ours is a copy. But in

1830.

Marsellis
v.
Thalhimer.

that case the posthumous child was herself the complainant, and the reasons assigned shew conclusively that it was for her benefit alone that she inherited ; for Lord Hardwick further says : "It has been admitted that the debt of nature which the father owes, to provide for all his children, will extend to posthumous children." (2 id, 116.)

Where is the necessity of a provision for a child born dead? "For the civil law for the benefit of the infant reputes a child in its mother's womb in the same condition as if it were born." (Bacon's Abr. p. 123, tit. Infancy and Age, C.) To enable the child after its birth to reap the benefit of these principles, it is necessary it should be born perfectly alive. (5 T. R. 64, Grose, J.; quotation made in Doe ex dem. Lancashire v. Lancashire.)

So by the Roman law, to enable the infant to succeed to property, it is necessary that it should be perfectly alive. Si vivus perfect est. (1 Beck's Medical Jurisprudence, 174.)

The French Code, 725, 906, cited in Beck's Medical Jurisprudence, interprets to words life or being born alive as being, according to the most distinguished French jurists and physicians, complete and perfect respiration. (1 Beck's Med. Jurisprudence, 174.)

Let us now see how the rights of the child are considered or what notice is taken of it when born dead. In the case of the King v. De Brouquens, (14 East's R. 276, 278,) it is decided under the bastardy act, that unless the child is born alive there is no bastard. Lord Ellenborough, Ch. J. in that case says, "In order to come under the denomination of a bastard, must not the child be born alive? All the several statutes assume the birth of a child, which of course must be born alive." Grose, J. in the same cause says, "No dead substance is the object of legislative provision in any of the acts."

It may be said that an infant in ventre sa mere takes by descent. It is so. But in that case the presumptive heir may enter and receive the profits for his own use till the birth of the child." (3 Wilson's R. 526.) "Where a person died leaving his wife ensient, the common law, &c. casts the free-

hold upon the person who is then heir. But when the posthumous child is born, his guardian may take possession, &c. and in such a case a posthumous child is not entitled to any profits received before his birth, because the entry of the heir was congeable till the posthumous child was born. ( 3 Cruise on Real Property, p. 385, tit. 29, ch. 3, § 12. ) These are cases relating to real estate, but they clearly shew that though the child for its own benefit takes by descent in ventre sa mere, until its birth the inheritance is not vested, but may be taken by the presumptive heir ; and if the child is still born the inheritance never vests.

The appellant claims as heir at law.

Possession is the evidence of title to personal property.

Where in this case is the possession of the infant ancestor that will entitle the mother heir to the inheritance ? The proviso to the statute of distributions is, " That if after the death of a father any of his children shall die intestate without wife or children," &c.

To entitle the mother as heir, the child must have died, and this proved by legal evidence. How can it be proved to have died without shewing that it first lived ? and of this there can be no evidence.

The case of *Thelusson* v. *Woodford*, (4 Vesey, jun. 227,) was strongly relied upon in the court below. That was a case arising upon the construction of a will, and we have not been able to discover any thing in it that militates against the principle contended for by the appellees, that a child in ventre sa mere acquires rights for its own benefit solely, to become perfect on condition of its being born alive.

The case in East before cited, and decided in A. D. 1811, shews in what light a dead child is viewed in legislative acts.

THE CHANCELLOR. It is at this day a well settled rule of law relative to successions, and to most other cases in relation to infants, that a child in ventre sa mere, as to every purpose where it is for the benefit of the child, is to be considered in esse. Thus in *Doe* v. *Clarke*, (2 Hen. Black. R. 399,) where the devise was to every child of C. which should be living at the time of his death, a posthumous child of C

1830.

Marsellis
v.
Thalhimer.

was held entitled under the devise. In *Miller* v. *Turner,* (1 Ves. sen 85,) a posthumous child was held entitled, under a provision in the marriage articles for every child who should be living at the death of the father. In *Hale* v. *Hale,* (Prec. in Ch. 50,) *Beale* v. *Beale,* (1Peere Wms. 245,) *Northby.* v. *Strang,* (id. 342,) *Burdet* v. *Hopegood,* (id. 486,) *Rawlins* v. *Rawlins;* (2 Cox. Ca. 425,) and *Thelusson* v. *Woodford,* (4 Ves. 227,) the same rule is recognized. In *Trower* v. *Butts,* (1 Sim. & Stru. R. 181,) Sir John Leach went still further, and held that under a bequest, to all the children of a nephew of the testatrix born in her life time, a child of the nephew in ventre sa mere, at the death of the testatrix, and which was not born for several months after, was included, and was entitled to an equal portion with the other children.

It was for some time doubted whether such a child could take a contingent remainder before its birth. That question was finally settled by the decision of the house of lords, in which Lord Chancellor Somers took the lead against the decisions which had been previously made on this subject by the king's bench and common pleas. It is now the settled law both in England and here, that the infant after conception, but before its birth, is in esse for the purpose of taking the remainder or any other estate or interest which is for the benefit of the infant. (*Stedfast* v. *Nicoll,* 3 Johns. Ca. 18. *Swift* v. *Duffield,* 5 Serg. & Raw. 38.)

The broad and unqualified language which has been used by some of the judges, has induced the appellant's counsel to suppose the unborn child was to be considered in existence for every purpose whatever, whether for its own benefit or that of others. That it may be considered in existence for the benefit of others in some cases, may perhaps be admitted ; as in the case mentioned by Buller, justice, (4 Ves. 323,) of an estate given to a third person during the life of an infant in ventre sa mere. But it must be recollected that the existence of the infant as a real person before birth is a fiction of law, for the purpose of providing for and protecting the child, in the hope and expectation that it will be born alive and be capable of enjoying those rights which are thus preserved for it in anticipation. The rule has been derived

from the civil law; and the constant struggle in the courts has been between that rule and certain principles of the feudal law, which required the heir to be capable of taking an immediate and beneficial interest in the estate. Especially under the statute of distributions must we resort to the civil law for the purpose of determining who are to take under its provisions.

Previous to the statute directing the grant of administration to the next of kin, the ordinary was in the habit of distributing the estate according to the rule of the civil law; but after the making of that statute, the temporal courts held that the administrator was not bound to make distribution of the residue; and as often as the spiritual courts attempted to compel such distribution, a prohibition was granted. The statute of distributions was therefore a legislative determination of the question in favor of the civilians. And in *Walles* v. *Hodson*, (2 Alk. 117,) Lord Hardwicke says, " I now take it to be fully settled that this act is to be construed by the rules of the civil law."

Although by the civil law of successions, a posthumous child was entitled to the same rights as those who were born in the life time of the decedent, it was only on the condition that they were born alive, and under such circumstances that the law presumed they would survive. The rules on this subject are found in Domat, in the Napoleon Code and in the Civil Code of Louisiana. Children in the mother's womb are considered, in whatever relates to themselves, as if already born; but children born dead, or in such an early state of pregnancy as to be incapable of living, although they be not actually dead at the time of their birth, are considered as if they had never been born or conceived. (Civil Code of Louisiana, art. 28, 29. Code Napoleon, art. 725, 966. Domat Prel. B. tit. 2, § 1, art. 4, 5, 6; pt. 2 lib. 2, tit. 1, § 1, art. 6, 7.) In the article last cited Domat says, " Still born children are not counted in the number of children who succeeded. And although they were alive in their mother's womb at the time the successions which concerned them fell, yet

they have no share in them; for they are considered in the same manner as if they never had been born." Children born within the first six months after conception, are considered by the civil law as incapable of living ; and therefore, although they are apparently born alive, if they do not in fact survive so long as to rebut the presumption of law, they cannot inherit so as to transmit the property to others. (Code Napoleon, art. 312, 725, 906. Code of Louisiana, art. 205. Dig. lib. 38, tit. 16, l. 3, § 12 ; & lib. 1, tit. 5, l. 12. Domat Prel. B. tit. 2, § 1, art. 5.)

I have not been able to find a case in the English or American reports in which the precise question now before me has arisen. The rule of the civil law is however clear and explicit ; and as the case must be one of frequent occurrence, the fact that such a claim has not before been made is strongly opposed to the right now insisted on by the appellant. In the analogous case of a tenancy by the curtesy, it is well settled that the child must be born alive in the life time of the mother, to entitle the father to the estate. And even the delivery of the child alive, by the cæsarean operation, after the death of the mother, is not sufficient. In that case, therefore, the rule holds that the unborn child may take the estate for its own benefit, but is not to be considered as in existence for the benefit of another person.

The question as to what is sufficient evidence that a child was born alive, and capable of living, so as to enable it to inherit property and transmit it to others, is ably examined by Doct. Beck, whose work on medical jurisprudence is the best treatise of the kind which has been published in this country or in England. (1 Beck's Med. Jur. 172.) Testing the evidence of what took place at the birth of the child, by the reasoning of Doct. Beck and the opinion of the physician who was examined before the surrogate, I am satisfied that no court is authorized to decide affirmatively that the child was born alive. There is no legal presumption in favor of the fact ; and as the mother claimed by descent from the child she held the affirmative and was bound to establish her right by legal proof.

The decision of the surrogate was therefore correct in awarding one half of the estate to the collateral heirs of the decedent; and his sentence and decree must be affirmed with costs.