In the Matter of the Estate of CHRISTIANA GEBHARDT, Deceased.

Surrogate's Court, Kings County, April 7, 1931.

*Paul G. Gravenhorst*, for the executors.

*Hyman Newman*, special guardian for Philip Lewis Gebhardt, John Calvin Gebhardt and Anna Mae Gebhardt, infants.

WINGATE, S.   The questions here presented are whether a child *en ventre sa mere* is, *first*, alive, and, *second*, born, so as to permit

it to receive a legacy limited to persons of a class possessing such characteristics.

That such a child is living or " alive " is not here seriously contested, and is incontrovertibly established by controlling authority. (Quinlan v. Welch, 69 Hun, 584, 585; affd., 141 N. Y. 158; Drobner v. Peters, 232 id. 220, 222; Matter of Voight, 178 App. Div. 751, 756; Matter of McEwan, 202 id. 50, 53; Marsellis v. Thalhimer, 2 Paige Ch. 35, 39; Matter of Wells, 129 Misc. 447, 452; Matter of Abbe, 138 id. 210, 212; Matter of Wall, Id. 213, 214; Matter of Levy, Id. 670, 671.)

The petitioner earnestly contends, however, that it is not " born," which word he attempts to hold to the narrow construction of " delivered." That such limitation of meaning is unjustifiable is demonstrated by the whole trend of pertinent authorities during the past two hundred years.

The most recent edition of Bouvier's Law Dictionary defines " born " as follows: " It is now settled according to the dictates of common sense and humanity, that a child en ventre sa mere, for all purposes for his own benefit, is considered as absolutely born."

This definition is also given in 9 Corpus Juris, 140, with abundant citation of authorities.

In order to determine that such is really the prevailing law in English-speaking countries, it may be worth while to note a few of the authoritative determinations on the subject.

In Wallis v. Hodson (2 Atkyns, 115) Lord Chancellor HARDWICKE, on January 22, 1740, after stating that the civil law was applicable to such questions, said (at p. 118): " Nothing is more clear, than that this law considered a child in the mother's womb absolutely born, to all intents and purposes, for the child's benefit."

In Swift v. Duffield (5 Serg. & R. [Pa.] 38) the following appears (on p. 40): " The whole class of children, and not particular individuals of that class, is comprehended in these words. One would feel remorse of conscience in being bound, by any inflexible rule of property, to exclude this infant; for it would be against reason and nature, and contrary to the plain intention of the testator.

" However the law might formerly have stood, there is, at present, no such rule. For it is now settled, according to the dictates of common sense and humanity, that a child en ventre sa mere, for all purposes for his own benefit, is considered as absolutely born."

That the English law has continued in accordance with the early rule of Wallis v. Hodson is shown by the language of Sir JOHN LEACH, Vice Chancellor, in Trower v. Butts (1 Sim. & Stu. 181, at p. 184): " Upon the whole, I am of opinion, that inasmuch as it is adopted as a rule of construction, that a Child in ventre

*sa mere* is within the intention of a Gift to Children living at the death of Testator, because plainly within the reason and motive of the Gift; so a Child *in ventre sa mere* is to be considered within the intention of a Gift to Children born in the life-time of a Testator, because it is equally within the reason and motive of the Gift."

This statement is quoted with approval and followed by Chancellor WALWORTH in *Marsellis* v. *Thalhimer* (2 Paige Ch. 35, at p. 39).

That the law of this State has at all times been in accord with this principle seems to be demonstrated by the language of *Stedfast* v. *Nicoll*, decided in January, 1802 (3 Johns. Cas. 18, at p. 24): " Indeed, with the aid of the statute of William, the rule appears invariably established in the English law, and was so declared by Mr. Justice BULLER, in the case of *Doe* v. *Clack* (2 Hen. Bl. 400), that whenever it would conduce to his interest, a child *in ventre sa mere* should be considered as absolutely born. After a train of decisions to this effect, the reason and equity of which equally apply to the present case, I should not be disposed to revive or enforce a technical rule founded on principles which have long ceased to operate, unless I found myself constrained by authority. The decision of the House of Lords, in the case of *Reeve* v. *Long*, has been treated with much severity, and imputed to sensibility rather than a regard to the existing law. Considering it as applicable to devises only, which have always received a more liberal construction than formal conveyances, perhaps it was not liable to all the censure that has been bestowed upon it. But whatever are its merits, it was the determination of the highest tribunal of the English law, in the last resort, and was soon thereafter indirectly sanctioned by the legislative provision on the subject. Independent of the statute of William, that determination must have been considered as prescribing the rule at common law, and as binding and conclusive on the English courts, and therefore, equally so on the courts in this country."

This language is quoted with approval by the Appellate Division of this department, in November, 1901, in *Cooper* v. *Heatherton* (65 App. Div. 561, at pp. 565 and 566).

The most recent authority which has been found is to like effect, and brings the principle substantially up to date. This is the exhaustive review of this subject by Surrogate SLATER in *Matter of Wells* (129 Misc. 447, 452), decided in April, 1927.

It is, therefore, incontestably established that a gift to a child " born " or " alive " includes one to a child of which its mother is *enceinte* at the time specified in the will.

While the statements of law noted would seem effectively to

dispose of the contentions of the petitioner adverse to the infant, a minor suggestion, based on the particular wording of the pertinent item of the will, deserves passing notice.

The legacy in question is given in the following terms:

"*Sixth.* I give and bequeath to my grandchildren, Ethel F. Gebhardt and Philip Lewis Gebhardt, each the sum of Two thousand ($2,000) Dollars; and I give and bequeath the sum of Two thousand ($2,000) Dollars to each of my grandchildren who may be born after the making of this Will, and who may still be living at my death. If any grandchild of mine mentioned or referred to in this sixth paragraph of my Will should die before me, then the sum which such grandchild would have received if living shall go to his or her father if living, and if the father of such grandchild be not living, then to the mother of such grandchild."

It is conceded that on March 21, 1927, about seven and one-half months after the death of the testatrix, Anna Mae Gebhardt, a daughter of testatrix's son Louis F. Gebhardt, was born, and it is her right to receive one of these legacies of $2,000 which is here litigated.

The contention of the executor, as an entirety, is to the effect that the proper construction should be to give such additional legacies only to such " grandchildren who may be born," *i. e.*, delivered, " after the making of this will and who may still be living at my death."

His argument is that the " still be living " is to be construed as progressive from " born " which he reads " delivered." Obviously his entire argument falls as a result of the determination that the law is against him on his definition of " born." But going further than this, if the foregoing item of the will be read as a whole, it is entirely apparent that the words " still be living " in the first sentence are used in contradistinction to the words " die before me " in the second, and that they do not contemplate cumulative and successive conditions as he argues. Testatrix desired to give legacies of $2,000 to each of her grandchildren. At the time of the drawing of the will, there were only two individuals answering to this description, and they are given such legacies by name. In order to provide, however, for future contingencies of a like nature and to preserve equality among her descendants in the second degree, the testatrix made this provision which was designed to put them all on a parity. The direction in the second sentence for the gift over in the event of predecease makes this testamentary intent extremely clear.

It was her design that each of her grandchildren who was living at her death should receive a legacy of $2,000. In case any such

beneficiary predeceased her, this bounty was to go to its father, or if he had also predeceased the testatrix, then to the mother. Every grandchild who came into being during testatrix's life was within the scope of her gift. Such justice and equality among her descendants of equal degree would furnish a strong appeal to any probate court, which would go to lengths here quite unnecessary to effectuate so laudable a desire. (*Matter of Harden,* 177 App. Div. 831, 835; affd., 221 N. Y. 643; *Soper* v. *Brown,* 136 id. 244, 248; *Stokes* v. *Weston,* 142 id. 433, 439; *Matter of Berbling,* 134 Misc. 730, 732; *Matter of Balsamo,* 136 id. 113, 115, 116; *Matter of Andrews,* 133 id. 365, 367.)

The court, therefore, determines that since this child, Anna Mae Gebhardt, has fulfilled both of the conditions precedent to the receipt of a legacy of $2,000 under the " Sixth " item of the will of this testatrix, it must be paid her.

Proceed accordingly.