(65 App. Div. 561.)

### COOPER v. HEATHERTON et al.

(Supreme Court, Appellate Division, Second Department. November 22, 1901.)

1. WILLS—CONSTRUCTION—TRUST ESTATE—TERMINATION.

   A will created a trust "to continue to run as aforesaid until my youngest child shall attain the age of 21 years." After testator's death, a child was born alive, and lived for about a year. *Held*, that the posthumous child was the youngest child, within the will, and that the trust terminated at its death.

2. PERPETUITIES—CHILD EN VENTRE SA MERE AS LIFE IN BEING.

   A child en ventre sa mere at the testator's death is a "life in being," within the statute against perpetuities, and a trust estate may be created, and the absolute ownership of the property suspended, until such child attains the age of 21 years.

3. CODICIL TO WILL—CONSTRUCTION.

   A will created a trust to continue until the testator's youngest child reached its majority, and then gave one half of the property to testator's son, and the other half to the other children. Thereafter a codicil was added, giving to the son a one-third interest in the property outright, and ratifying the will in other respects. *Held*, that the codicil was not intended to change the ultimate distribution of the property, but merely to take one-third out of the trust, and that at the termination of the trust the son was entitled to the balance of his half of the property, as under the original will.

Appeal from special term, Kings county.

Suit by Frank B. Cooper, as trustee under the will of James M. Heatherton, deceased, against James M. Heatherton, individually and as cotrustee, etc., and others, in which plaintiff sought the removal of his cotrustee as executor of the decedent's estate, and other relief. From an interlocutory judgment determining the rights of the parties under the will, finding that the trust created thereby had terminated, and decreeing the sale of the trust property under certain contingencies, etc., plaintiff and certain defendants file cross appeals. Modified.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

William D. Niper and John T. Canavan, for plaintiff.

Henry H. Pierce (William C. Prime, on the brief), for defendants.

JENKS, J. The seventh paragraph of the will reads as follows:

"In case of the remarriage of my said wife, or at her death, said paper, which will also include the money in bank or trust companies, is still to continue to run, as aforesaid, until my youngest child shall attain the age of twenty-one years, and then I bequeath one half of my said paper, which will include one half of all money in bank or trust companies, to my son James M. Heatherton, Jr., and the other half of said paper, which will include the other half of all moneys in bank or in trust companies, to the rest of my children, in equal shares."

The testator died on March 18, 1895, leaving a widow and eight children, who had been born prior to the making of his will. After the death of the testator, a child, Alice, was born alive, on October 10, 1895, and lived until September 24, 1896. The testator's widow died in 1899. The learned special term, Marean, J., presiding, held that the lives referred to in said seventh clause cf the will were those of the widow and of the said posthumous child, Alice. The learned counsel for the plaintiff appellant insists that the youngest child therein referred to was she who had been born and was living at the time of the death of the testator. I think that the plain purpose of the testator was that the property should be held undivided until the youngest of them should reach maturity, in order to make provision for the support and maintenance of his family. To this end he suspended the absolute ownership until that period. I think, therefore, that he had not in view any particular child that could be described as his youngest child, but simply selected such child, whoever it might be, in order that the division should be postponed until all of them became of age. The term, however, is measured by the life of the widow and the youngest child, and, inasmuch as it must be restricted to lives in being at the time of the death of the testator, the question presented is whether a child en ventre sa mere at the death of the testator is regarded as a life in being, within the meaning of the statute. In Long v. Blackhall, 7 Term. R. 160, it was contended that the will violated the rule of the common law against perpetuities, in that the lives were not all in being when the testator died. Kenyon, Lord Chief Justice, held that a child en ventre sa mere was within the rule. In the famous case of Thellusson v. Woodford, 4 Ves. 227, Buller, J., at page 322 et seq., discusses the doctrine, comments upon the cases, and concludes:

"Why should not children en ventre sa mere be considered generally in existence? They are entitled to all the privileges of other persons. In this case it is enough to say that such child is capable of having an estate given to him, and consequently to another person for his life."

This decision is noticed by the chancellor in Marsellis v. Thalhimer, 2 Paige, 35, 21 Am. Dec. 66, where he says:

"That it may be considered in existence in some cases for the benefit of others may perhaps be admitted, as in the case mentioned by Buller, J., in Thellusson v. Woodford, 4 Ves. 323, of an estate given to a third person for the life of an infant en ventre sa mere."

In Stedfast v. Nicoll, 3 Johns. Cas. 18, Kent, J., notes "a late case" (Doe v. Clarke, 2 W. Bl. 400), where "the court go so far as to say that it is now settled that an infant en ventre sa mere shall be considered, generally speaking, as born, for all purposes for his own benefit. In that case, Chief Justice Eyre observed 'that an infant en ventre sa mere came clearly within the description of a child living at the time of his father's death.'" A note appended to Stedfast v. Nicoll, supra, by the famous reporter, William Johnson, comments upon the force and effect of the English decisions. In the report of Thellusson v. Woodford, 11 Ves. 112, the chief baron speaks of the extension of the rule to a child en ventre sa mere at the time of the father's death, because that contingency

must necessarily happen within nine months after the death of a person in being, and therefore such construction would introduce no inconvenience. He also notes the case of Doe v. Clarke, 2 W. Bl. 399, referred to in the opinion of Kent, J., supra. And he seems to have adopted verbatim the language of Lord Chief Justice Willis in Goodtitle v. Wood, cited by the reporter in the note at the foot of the report of Long v. Blackall, 7 Term R. 100. 1 Bl. (Cooley's Ed.) 180, says:

"An infant en ventre sa mere, or in the mother's womb, is supposed in law to be born, for many purposes. It is capable of having a legacy, or a surrender of a copyhold estate, made to it. It may have a guardian assigned to it, and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born. And in this point the civil law agrees with ours."

4 Kent, Comm. 249, says:

"But the decision of the king's bench upon that point was reversed by the house of lords; and it is now the settled law in England and in this country that an infant en ventre sa mere is deemed to be in esse, for the purpose of taking a remainder, or any other estate or interest which is for his benefit, whether by descent, by devise, or under the statute of distributions."

See, too, Bouv. Law Dict. "Life"; Cadell v. Palmer, 1 Clark & F. 372–414, et seq.; Gray, Perp. 220; Mason v. Jones, 2 Barb. 229–251, et seq.; Crisfield v. Storr, 36 Md. 129, 145, 11 Am. Rep. 480; Swift v. Duffield, 5 Serg. & R. 38; Hall v. Hancock, 15 Pick. 255, 26 Am. Dec. 598. Judge Thomas, in his Law of Estates Created by Will (volume 1, p. 403), says:

"The suspension of the power of alienation during the minority or life of a child conceived, but unborn, at the creation of the estate, is allowed. Such child is in being from the time of conception, and estates limited to him or upon his life are valid,"—citing Hone v. Van Schaick, 3 Barb. Ch. 488.

The reversal of this case (3 N. Y. 538) did not involve this question.

Cadell v. Palmer, supra, finally settled the rule in England to be that property could not be rendered inalienable beyond a life or lives in being and 21 years afterwards without reference to the infancy of any person, and a person en ventre sa mere was for the purposes of the rule considered in existence. See Fowl. Real Prop. Law, 155. Mr. Fowler says that, while this is not binding on our courts, its reasoning is conclusive, and establishes the common-law rule. He further points out that the revisers of our statutes only changed the rule which permitted a term in gross for 21 years to be added to any number of lives in being, and decreased the number of lives to two. Id., 171. See, too, Jarm. Wills, § 216, where he says, "To treat the period of gestation, however, as an adjunct to the lives is not, perhaps, quite correct." It seems more proper to say that the rule of law admits of the absolute ownership being suspended for a life or lives in being and 21 years afterwards, and that for the purposes of the rule a child en ventre sa mere is considered as a life in being.

The cases cited by the learned counsel for the plaintiff appellant may be discriminated. Kilpatrick v. Johnson, 15 N. Y. 322, holds that the statute that authorized an accumulation for minors then

in being, or in being at the death of the testator and to terminate with minority, did not contemplate an accumulation for children born after the testator's death. But in Manice v. Manice, 43 N. Y., at page 376, Rapallo, J., says:

"An accumulation for the benefit of an unborn child, to commence after the birth of the child, and to terminate with his minority, is lawful, provided it is to commence within the time permitted for the vesting of future estates, that is to say, at the expiration of two lives in being, but an accumulation for the benefit of an unborn child, to commence before his birth, is not permitted under any circumstances, and this was the objection to the validity of the accumulation in the cases of Haxtun v. Corse, 2 Barb. Ch. 518, and Kilpatrick v. Johnson, 15 N. Y. 322."

The reason for the decision is not applicable in this case. The period in question of the child in the case at bar is its minority.

In Roe v. Vingut, 117 N. Y. 213, 22 N. E. 933, it was said that the youngest grandchild might be a grandchild born after the death of the testatrix, and hence not in being at the creation of the trust, and that bounding the trust term by such a life would be in violation of the statute, and would be void. But the question as to whether a child en ventre sa mere is a life in being was not presented or discussed, and the remark might well apply to a grandchild who was both conceived and born years after the death of the testatrix. I am of opinion that the child en ventre sa mere at the testator's death, which was born alive and lived, may be regarded as a life in being at the time of the testator's death, within the purview of the statute. The will was executed in December, 1893. In March, 1895, the testator executed a codicil which reads as follows:

"I hereby ratify and confirm said will in every respect, save so far as any part of it is inconsistent with this codicil. I give and bequeath unto my beloved son, James M. Heatherton, Jr., a one equal third part or interest in and to the Plumbers' Trade Journal, mentioned in the foregoing will, such interest to commence at my decease, and I direct that the said Plumbers' Trade Journal shall be continued under the management of said son, James M. Heatherton, Jr."

The learned special term decided that a trust was created of two-thirds of the estate, and that the third part, bequeathed to James, vested in him upon the death of the testator, and was not included in said trust. It further decided that the trust had terminated upon the death of Alice M. Heatherton, and that the estate is vested, under the terms of the will and the codicil, in shares, as follows: One-third in James M. Heatherton, and the remaining two-thirds in the remaining children, in equal shares. Reading the will and the codicil, mindful that the scheme of the testator manifested in both is to stand as far as possible, it will be noticed that the testator, neither in express terms nor in terms of necessary implication, diminished or increased the interest given to James by the will. By the will he gives one-half of the paper and of the money in the bank to James, at the termination of the lives of the widow and of the youngest child. By the codicil he gives one equal third part of the paper at his decease to his son James, who, by both codicil and will, is to be the manager thereof. I think that his intent, as declared by will and codicil, read together, was to take one-third of

the paper out of the trust, and to continue that trust as to two-thirds of the paper, and of the money in bank and trust company, without disturbing the proportions of ultimate disposition made of the paper and the money; that is, that James, in addition to his absolute one-third, is to have so much of the property at the termination of the trust as will afford to him one-half of the paper and one-half of the money. This would afford to him at the termination of the trust one-sixth of the money and one-sixth of the paper, in addition to the one-third, or two-sixths, already given to him. There is strong reason for this construction in the fact that if the final scheme of the testator is changed by the codicil, so as to give James the one-third only that was to vest in him at the death of the testator, then such scheme fails to make disposition of the entire estate, for it would dispose of but the one-third given to James and the one-half given to the other children at the termination of the trust. There is nothing in the will or codicil, or in will and codicil, which would justify an increase of the share given to the children, exclusive of James, by the addition of the said one-sixth undisposed of. I am of opinion, then, that the judgment should be modified, so as to give one-half interest to the children, exclusive of James, at the termination of the trust, and one-sixth to James at that time, and one-third also to James absolutely at the death of the testator. It would follow that but two-thirds was subject to the sale ordered and directed by the court, inasmuch as the one-third was vested absolutely in James at the death of the testator.

The judgment should be modified in accordance with this opinion, and, as so modified, affirmed, with costs to all parties to this appeal, payable out of the trust fund. All concur.

GOODRICH, P. J., votes for affirmance, on the ground that the provision in the codicil for James M. Heatherton was intended by the testator as a substitution for the provision made for him in the will.