## NUGENT v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. January 10, 1913.)

INFANTS (§ 72*)—INJURY TO UNBORN CHILD—RIGHT OF ACTION AFTER BIRTH —"NEGLIGENCE."

    Although there is a residuum of injury for which neither parent can recover, and although a child en ventre sa mere is an entity for many purposes, yet a child cannot after its birth recover from a railroad company damages for a deformity caused by the company's negligence in transporting its mother, who was then enceinte, for no relation of carrier and passenger extended to the fœtus, the carrier's duty only extending to the mother, and so it could not be guilty of negligence towards it, for that is the culpable failure to observe a duty owed by one to another in a particular relation, and for the same reason no action for breach of contract will lie.

    [Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 180–185; Dec. Dig. § 72.*

    For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763; vol. 8, pp. 7729–7731.]

Appeal from Trial Term, Kings County.

Action by Girard Nugent, an infant, by Arthur A. Nugent, his guardian ad litem, against the Brooklyn Heights Railroad Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

William E. Butler, of New York City, for appellant.
D. A. Marsh, of Brooklyn, for respondent.

THOMAS, J. The plaintiff has sued for injuries received 36 days before his birth on September 5, 1911, through the negligent starting

of defendant's car, while his mother was alighting therefrom on July 31, 1911. The appeal is from the judgment for defendant on the pleadings after demurrer to the complaint. The father has brought a separate action for expenses incurred and services lost by reason of the child's injuries.

The question presented for the first time in this state is worthy of consideration, inasmuch as, if this action upon proper pleading may not be maintained, there is no remedy unless in an action by the mother for damages to her by reason of injuries to her son, and that would be inadequate. The statement in the complaint is, in effect, that the injuries to the mother affected the plaintiff's body, resulting in deformity at birth and less than normal nervous and physical condition, and otherwise injured him. The fact that the child was deformed, and would suffer thereby, would cause the mother mental pain, and, even if she could recover for that, the mental pain the child would suffer and the mere fact of deformity with its consequent diminution of the value of capacities and faculties could not be included in her recovery. The father, in case he could recover at all, could do so only so far as the injury enlarged the expense of the child's maintenance and entailed loss of service. So, however the subject be viewed, there is a residuum of injury for which compensation cannot be had save at the suit of the child, and it is a question of grave import whether one may wrongfully deform or otherwise injure an unborn child without making amends to him after birth. The identification of an unborn child with the mother, and the merger of its individuality in her own, would seem justly to be limited by her ability to recover full compensation for the injury done both to her and to him. In the case at bar certain of his injuries can be segregated, but she cannot represent him for the purposes of recovery for them. If, now, one should assault the mother, whereby violence would be transmitted injuriously to an unborn child, there seems to be no reason to deny him an action after his birth for his injuries. The inconvenience of discovering the resultant injury does not affect the present inquiry, as the naked fact of such harm is admitted by the demurrer to the complaint alleging it. It would be no answer to the trespasser that the child was concealed in the mother's womb. The wrongful act initiated by the assailant would reach the child, as it might result in tortious contact with any third person, although that was not within the purpose of the actor. So, if a tort be an act of negligence, the remedy is not confined to the person next to the act in sequence. But it may be answered that an unborn child is not an entity. Hence a trespass upon it does not invade the personal rights of a human being so as to admit of a civil remedy at its instance after birth. And so it is argued, in effect, that an unborn child is not a member of political society so as to be related to others engaged in any of the activities or subject to any of the conditions of life. From this it would be argued that no person actually born owes an unborn any duty of which there can be a culpable breach. That is, none of the rights of the person attach to him because he is not a person. It is repeating arguments several times advanced in this connection to say that an unborn child has, conditioned upon its birth,

usual rights of property, and the remedies that pertain to them for actionable injuries inflicted before his birth. The being that owns is the supreme consideration and has capacity for ownership. What is owned and the right to own are merely incidental to the living entity.

And yet shall the incidents be valued in legal cognizance and the owner not? But when in legal apprehension for the purposes of property rights does the entity begin? And what are its capacities? It is sufficient for present purposes to state that it begins before birth, and that it has all the capacities of born persons to receive property, and after birth to enjoy it, and redress prenatal injuries to it. It is in being for the purpose of measuring the valid limitation of estates. Long v. Blackall, 7 Durn. & East. 96. An estate may be given to it or to another person for its life (Thellusson v. Woodford, 4 Ves., Jr., 227), and a guardian may be appointed for it (Marsellis v. Thalhimer, 2 Paige's Ch. 35, 21 Am. Dec. 66). The death of its father by the wrongful act of another by culpable negligence may injure it so as to permit recovery therefor after birth. The George and Richard, L. R. 3 Adm. 465, noticed approvingly in Quinlen v. Welch, 69 Hun, 584, 23 N. Y. Supp. 963, where it is also said:

"It has been held that the civil rights of such an infant are equally respected at every period of gestation; and it is clear that, no matter at how early a stage, it may be appointed an executor, is capable of taking as legatee or under a marriage settlement, may take specifically under a general devise as a child, and may obtain an injunction to stay wastes."

In Cooper v. Heatherton, 65 App. Div. 561, 73 N. Y. Supp. 14, Mr. Justice Jenks discusses the status of an unborn child in regard to property rights, and says:

"In Stedfast v. Nicoll, 3 Johns. Cas. 18, Kent. J., notes 'a late case' (Doe v. Clarke, 2 H. Black. 400), where 'the court go so far as to say that it is now settled that an infant en ventre sa mere shall be considered, generally speaking, as born, for all purposes for his own benefit."

Is not the right to be born with normal faculties the capacities for its benefit? If so, he who takes it away deprives the child of the highest good. In Walker v. Great Northern Railway Company (1890) 28 L. R. (Ir.) Q. B. & Ex. Div. 69, 75, O'Brien, C. J., in commenting on the rule that a child in utero is considered as actually born when it is necessary for the benefit of such unborn child so to be considered, said with reference to a case of a person disabled from earning a livelihood by willful injury to it in the womb:

"In the case I put it would be manifestly for the benefit of the child that it should be considered as born at the time the injuries were inflicted, and that an action could be maintained."

In that action the claim was that the mother, quick with child, was received by the defendant for safe carriage, but that the defendant so negligently conducted himself that plaintiff, thereafter born, was permanently injured and crippled, and the demurrer to the claim was sustained. The several judges wrote with much reference to the cases, statutes, and civil, ecclesiastic, and common law relating to the status of an unborn child, and, while there was diversity of view, they met

on one ground, that the plaintiff was not a passenger, and hence there was no breach of contract of carriage. The discussion suggests the usual current of thought on this subject. O'Brien, C. J., quotes the language of Mr. Justice Buller in Thellusson v. Woodford, 4 Ves. Jr. 335, in reference to the allegation that a child in his mother's womb was a nonentity:

"'Let us see what this nonentity can do. He may be vouched in a recovery, though it is for the purpose of making him answer over in value. He may be even executor. He may take under the Statute of Distributions. He may take by devise. He may be entitled under a charge for raising portions. He may have an injunction, and he may have a guardian. Some other cases put this beyond all doubt. In Wallis v. Hodson, 2 Atk. 117, Lord Hardwicke says: "The principal reason I go upon in the question is that the plaintiff was en ventre sa mere at the time of her brother's death, and consequently a person in rerum natura, so that, by the rules of the common and civil law, she was to all intents and purposes a child as much as if born in the father's lifetime." In the same case Lord Hardwicke takes notice that the civil law confines the rules to cases where it is for the benefit of the child to be considered as born; but, notwithstanding, he states the rule to be that such child is to be considered living to all intents and purposes.' And the plaintiff's counsel also rely upon a passage lower down (at the close of page 322) in Mr. Justice Buller's judgment, where he states 'In Doe v. Clarke, 2 H. Bl. 399, the words "that whenever such consideration would be for his benefit, a child en ventre sa mere shall be considered actually born," were used by me because I found them in the book from whence the passage was taken. Why should not children en ventre sa mere be considered generally as in existence? They are entitled to all the privileges of other persons.'"

O'Brien, C. J., also discusses the case of Rex v. Senior, 1 Moody, C. C. 346, where a doctor attending on childbirth was held to have been found guilty properly of manslaughter for inflicting through culpable ignorance and want of skill a wound on the child during and before its birth, whereby it died. Johnson, J., discusses ancient rules, practice, and instances decisions to the disadvantage of the plaintiff, even to indicating dissatisfaction with the reversal by the House of Lords of the decision in Long v. Reeve, 3 Lev. 408, to the effect that in a devise for life, remainder to his first and other sons in tail, a child born after the death of the life tenant was not in esse on the determination of the particular estate by his father's death. So far was it deemed helpful to go to aid the argument that at the time of the accident, "as Lord Coke says, the plaintiff was then pars viscerum matris," and the learned judge adds:

"We have not been referred to any authority or principle to show that a legal duty has ever been held to arise towards that which is not in esse in fact and has only a fictitious existence in law, so as to render a negligent act a breach of that duty."

It is to this conclusion that an unborn child is not in existence so as to be entitled to the protection of his person as well as his property that I dissent. It is not helpful to characterize its existence as fictitious as to property rights. The rights are accorded to it. The indisputable fact is that one is answerable to the criminal law for killing an unborn child who to that end is regarded as in esse, and the further fact is that the unborn child, so far as the property interests are concerned, is regarded as an entity, a human being with the remedies

usually accorded to an owner.  But the argument then proceeds that one must respect the rights of ownership, and, so far as a civil remedy is concerned, disregard the safety of the owner.  In such argument there is not true sense of proportion in the protection of rights. The greater is denied; the one lesser and dependent on the very existence of a person in esse and entitled to protection is respected.  In Walker v. Great Northern Railway Company, O'Brien, J., says:

"The pity of it is as novel as the case—that an innocent infant comes into the world with the cruel seal upon it of another's fault, and has to bear a burthen of infirmity and ignominy throughout the whole passage of life."

And he adds:

"I would not myself see any injustice in the abstract in such an action being held to lie, or in the risks of a carrier being extended to the necessary incidents of nature," although he considered "on what a boundless sea of speculation in evidence this new idea would launch us."

In my view, justice should not be turned aside and wrongs go without remedies because of apprehension of what may happen in jurisprudence if it be decided that an unborn child has some rights of the person.  But here is reached the critical stage of the inquiry.  This is an action for negligence, for violation of defendant's duty as a carrier, and defendant cannot be judged as a trespasser.  Negligence is culpable failure to observe a duty owed by one to another in a particular relation, and remedy is allowed for injury therefor.  What duty did the defendant as a carrier owe the unborn child?  The child in its distinct entity was not a passenger, and the company owed it as a separate person no duty in the matter of safe carriage.  Had it, born, been carried in its mother's arms, it would have been a gratuitous passenger, but the carrier's duty towards it would not have been thereby lessened.  The learned counsel for the plaintiff suggests that the duty would attach had the child been concealed in a garment.  Such condition does not usually escape the observation of the carrier's servants exercising ordinary attention, and the case of mothers concealing their infants from the expectable knowledge of carriers might, under some circumstances, excuse some act of the carrier whereby it was injured.  But it is not the duty of a carrier to scrutinize its passengers for the detection of unborn children, to the end that they, although latent, may be regarded as passengers.  It undertakes to carry as passengers the born, and not the unborn.  It carries by compulsion those visibly offering themselves.  So the mother presents herself and her living children, and the carrier is bound by the law of the realm to receive and to carry them.  Its duty begins with receiving and ends with discharging them, and due care is required.  The plaintiff stood in no such relation to the carrier as to earn such obligation on its part, and liability to respond for injury for the negligent carriage and discharge of the mother was coincident with the limits of its duty to her. The obligation arises from implied convention with the state that the carrier shall transport persons with due care, and the remedy is given to the one injured by the breach.  The obligation is the same whether the action is in form based on breach of contract or of duty to carry.

Carroll v. Staten Island R. R. Co., 58 N. Y. 126, 17 Am. Rep. 221. Thus if, for injury to a woman by a car on the street whereby her unborn child is deformed, a railway company were liable to the child after birth in its action, yet it would not be liable to the child for mere negligence in the carriage of the mother, as it would owe its duty as a carrier to the mother, and not to the child. Such was the conclusion in Walker v. Great Northern R. Co. (1891) 28 Irish Law Reports, Q. B. & Exch. Div. 69, which has been noticed. Much broader was the decision in Dietrich v. Northampton (1884) 138 Mass. 14, 52 Am. Rep. 242, where a premature birth was caused by the mother slipping by reason of a defect in the defendant's highway, whereupon the child, too little advanced in fœtal life, lived a few minutes, and it was held that an action for the death in behalf of the next of kin could not be maintained by its representatives. In Allaire v. St. Luke's Hospital (1900) 184 Ill. 359, 56 N. E. 638, 48 L. R. A. 225, 75 Am. St. Rep. 176, affirming 76 Ill. App. 441, the action was as alleged upon the defendant's contract to deliver the child without harm, whereas the mother was negligently hurt during carriage by defendant's elevator to the obstetrical part of the hospital, so that at its birth it had resultant injuries. It was decided that the action could not be maintained, but Boggs, J., dissented in an opinion expressing independent and logical thought, although his views would preclude recovery in the case at bar.

The judgment should be affirmed, with costs. All concur.