Joseph Drobner, an Infant under the Age of Fourteen Years, by His Guardian ad Litem, Sarah Drobner, Respondent, *v.* August L. Peters, Appellant.

First Department, January 14, 1921.

Negligence — injury to unborn child through fall of mother caused by negligence of defendant in maintaining coal hole in sidewalk — right of child to maintain action at common law.

A child may maintain an action at common law for injuries sustained eleven days before birth from a fall of the mother alleged to have been caused by the negligence of the defendant in permitting a coal hole in the sidewalk in front of his premises to become and remain in a dangerous condition.
Clarke, P. J., and Page, J., dissent, with opinion.

Appeal by the defendant, August L. Peters, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 9th day of June, 1920, denying defendant's motion for judgment on the pleadings.

*William Dike Reed* [*William B. Shelton* with him on the brief], for the appellant.

*David Batt* [*J. M. Cohen* with him on the brief], for the respondent.

Merrell, J.:

The action is to recover damages for personal injuries claimed to have been sustained by the infant plaintiff through the negligence of the defendant. The defendant demurred to the complaint upon the ground that the same did not state facts sufficient to constitute a cause of action.

The facts set forth in the complaint, and upon which the plaintiff seeks to recover herein, are as follows: At the time of the accident the defendant was the owner of certain premises at 19 West One Hundred and Eighteenth street in the borough of Manhattan, city of New York; that in front of the said premises and adjacent thereto there was a sidewalk, a public highway in said borough of Manhattan; that in said sidewalk in front of defendant's premises and underneath the same defendant maintained a vault and coal chute and coal hole

with an iron cover; that the said vault or coal hole was illegally and unlawfully maintained by the defendant in that no proper permit from the authorities was obtained for its maintenance, constituting it thereby a public nuisance. The plaintiff further alleges that on the 17th day of April, 1919, while the infant plaintiff was an unborn child and within its mother's womb, plaintiff's said mother, while lawfully on the sidewalk in front of said premises, was suddenly and violently precipitated to the sidewalk and was seriously and painfully and permanently injured, causing the plaintiff herein to sustain serious, painful and permanent injuries, which were caused by reason of the negligence of the defendant, his agents, servants and employees, in maintaining the said nuisance, and in carelessly and negligently permitting the said coal hole to be, become and remain uncovered and in a dangerous condition, so as to become dangerous to the life and limb of persons walking on said sidewalk, and in failing to have the said coal hole properly covered in accordance with the ordinances of the city of New York,* and not by reason of any negligence on the part of the plaintiff thereto contributing; that the said injuries so sustained by the infant plaintiff were in no way caused by or due to any negligence on his part, but were caused solely and wholly by and through the carelessness and negligence of the said defendant in so maintaining said nuisance so that the mother of the infant plaintiff was caused to fall and her foot was caused to enter said coal hole; that as the result thereof the plaintiff was rendered sick, sore, lame and disabled, having suffered serious and painful injuries in and about his head, body and limbs, and further sustained a shock to his nervous system, and, as he has been informed and verily believes, will continue to suffer therefrom for an indefinite period of the future, and to be permanently injured as a result thereof; that as a result thereof plaintiff was compelled to and did actually retain the services of various physicians and will be compelled to retain the services of other physicians, and has incurred obligations thereby and will be compelled to incur other obligations, all to the plaintiff's damage in the sum of $10,000.

---

* See Code of Ordinances, chap. 23, art. 17.— [REP.

The question raised by the demurrer and now to be determined by this court is as to whether or not the plaintiff can recover damages herein for the injuries which he claims were sustained by him prior to his birth as the result of the negligence of the defendant.

The plaintiff was born on April 28, 1919, eleven days after the accident above described. There can, therefore, be no question that plaintiff's mother, at the time she fell into the coal hole, was quick with child.

The question as to whether a person may recover damages for injuries sustained prior to birth as the result of the negligent act of another has never been authoritatively determined by the courts of this State, although the question involved has been several times before the courts.

It is the contention of the appellant that at the time of the injury complained of plaintiff was not a being *in esse* and, therefore, was not a living entity capable of being injured through an act of negligence so as to give rise to a cause of action after birth. If the appellant is correct in such contention, no act of negligence, no matter how gross, which affects an unborn child so as to cause deformity at and after birth, is actionable.

I think the great weight of judicial authority has established that for all purposes beneficial to the infant after his birth an infant *en ventre sa mere* shall be considered to be born. It has frequently been held that an unborn child has extensive rights and important privileges which can be protected by the courts. A child *en ventre sa mere* has been considered *in esse* for the purpose of assuring the valid limitation of estates. (*Long* v. *Blackhall*, 7 Durn. & East, 100.) Such an infant is entitled to have a guardian appointed for it. (*Marsellis* v. *Thalhimer*, 2 Paige, 35.) An estate may be given or bequeathed to it or to another person for its life. (*Thellusson* v. *Woodford*, 4 Ves. Jr. 227–343.) Upon the death of a father by the negligent act of another occurring prior to the child's birth, the latter may recover for the injury sustained (*The George & Richard*, L. R. 3 Adm. 466), which case was approved in *Quinlen* v. *Welch* (69 Hun, 584). Similar rights are exhaustively discussed by Chief Judge O'BRIEN in the case of *Walker* v. *Great Northern R. Co.* (28 L. R. Ir. 69). The

case last mentioned is quite similar to the one at bar, the injury claimed to have been suffered by the child having been caused by the alleged negligence of the defendant railroad. The court, however, held in that case, inasmuch as the defendant's liability was based upon contractual relationship, that no such relationship could exist between the defendant and the unborn child. In his very exhaustive opinion Chief Judge O'BRIEN cites the numerous authorities on the rights of children *en ventre sa mere,* and strongly suggests that in his opinion the plaintiff in that case would have a right of action were it not for the absence of a contractual relation with the defendant railroad.

In *Thellusson* v. *Woodford* (4 Ves. Jr. 322) Justice BULLER says: " Let us see what this non-entity can do. He may be vouched in a recovery, though it is for the purpose of making him answer over in value. He may be named executor. He may take under the Statute of Distributions. He may take by devise. He may be entitled under a charge for arresting persons. He may have an injunction, and he may have a guardian."

In *Wallis* v. *Hodson* (2 Atk. 117) Lord HARDWICKE says: " The principal reason I go upon in the question is, that the plaintiff was *en ventre sa mere* at the time of her brother's death, and consequently a person *in rerum natura,* so that, by the rules of the common and civil law, she was to all intents and purposes a child as much as if born in the father's lifetime."

In this same case Lord HARDWICKE notes that under the civil law the reason for the rule is that it is necessary to adopt it *whenever it is for the benefit of the child* to be considered as born, but he states the rule to be " that such child is to be considered living to all intents and purposes."

In *Doe* v. *Clarke* (2 H. Black. 399) it is said that " wherever such consideration would be for his benefit, a child *en ventre sa mere* shall be considered as absolutely born." Justice BULLER in *Thellusson* v. *Woodford* (4 Ves. Jr. 227, 323) says: " Why should not children *en ventre sa mere* be considered generally as in existence? They are entitled to all the privileges of other persons."

In the case of *The George & Richard* (*supra*) Sir ROBERT PHILMORE held that a child *en ventre sa mere* was a child within the meaning of Lord Campbell's Act (9 & 10 Vict. chap. 93)

so as to be capable when born of maintaining an action in respect of the pecuniary loss sustained by the death of its father owing to the wrongful act of others done whilst it was in the womb.

Among the more recent cases which recognize the entity of an unborn child are the following: *Herndon* v. *St. Louis & S. F. R. Co.* (128 Pac. Rep. 727), in which it is held: "A child unborn at the time of his father's death, but later born alive, is to be considered under our laws as an existing person at the time of his father's death, and, therefore, a beneficiary and entitled to participate under the statute in any recovery of damages for the wrongful death of the father."

In *Galveston, H. & S. A. R. Co.* v. *Contreras* (72 S. W. Rep. 1051) it was held that in an action by a posthumous child for damages sustained by reason of his father's death, caused by defendant's negligence, the fact that the mother and other children have recovered damages for such death is immaterial.

In *Cooper* v. *Heatherton* (65 App. Div. 561) Mr. Justice JENKS says, in discussing the status of an unborn child: "In *Stedfast* v. *Nicoll* (3 Johns. Cas. 18) KENT, J., notes 'a late case' (*Doe* v. *Clarke*, 2 H. Black. 400) where 'the court go so far as to say that it is now settled that an infant *en ventre sa mere* shall be considered, generally speaking, as born, for all purposes for his own benefit.'"

Blackstone thus enunciates the rule: "Life is the immediate gift of God, a right inherent by nature in every individual; and it begins in contemplation of law as soon as an infant is able to stir in the mother's womb." (1 Black. Com. 129.)

There can be no doubt but that the courts have always recognized the fact that a child *en ventre sa mere* is an entity not only entitled to the recognition but to the protection of the courts.

So far as I have been able to discover, the courts of our State have on only one occasion considered the right of an injured person to bring an action to recover damages for injuries inflicted prior to birth. In the case of *Nugent* v. *Brooklyn Heights R. R. Co.* (154 App. Div. 667) the precise question here involved was passed upon. Nugent was an infant who was injured thirty-six days before his birth through the negligence of the defendant railroad. At the time the

alleged act of negligence occurred the plaintiff's mother was upon a car controlled by the defendant. While alighting therefrom she was severely injured, resulting in the deformity of the plaintiff. It was necessary for the court in the *Nugent* case to determine two questions: *First,* as to whether or not an action will lie by one claiming to have been injured prior to birth through the negligent act of another; and, *second,* whether the plaintiff had a right of action against the defendant as a common carrier. The opinion was written by Mr. Justice Thomas and is very exhaustive and illuminating. The court held that a child *en ventre sa mere* is in existence and is entitled to the protection of his person as well as his property, and that there is no reason why such a child who has received personal injury and is born deformed should not have a right of action against the person or corporation which caused the injury. The argument of Mr. Justice Thomas is very clear and is, in part, as follows: " It would be no answer to the trespasser that the child was concealed in the mother's womb. The wrongful act initiated by the assailant would reach the child, and it might result in tortious contact with any third person, although that was not within the purpose of the actor. So, if a tort be an act of negligence, the remedy is not confined to the person next to the act in sequence. But it may be answered that an unborn child is not an entity. Hence, a trespass upon it does not invade the personal rights of a human being so as to admit of a civil remedy at its instance after birth. And so it is argued in effect that an unborn child is not a member of political society so as to be related to others engaged in any of the activities or subject to any of the conditions of life. From this it would be argued that no person actually born owes an unborn any duty of which there can be a culpable breach. That is, none of the rights of the person attach to him because he is not a person. * * * An unborn child has, conditioned upon its birth, usual rights of property, and the remedies that pertain to them for actionable injuries inflicted before his birth. The being that owns is the supreme consideration and has capacity for ownership. What is owned and the right to own are merely incidental to the living entity. And yet, shall the incidents be valued in legal cognizance and the owner not? But when, in legal apprehension for the

purposes of property rights, does the entity begin? And what are its capacities? It is sufficient for present purposes to state that it begins before birth, and that it has all the capacities of born persons to receive property, and after birth to enjoy it, and redress pre-natal injuries to it. * * * It is not helpful to characterize its existence as fictitious as to property rights. The rights are accorded to it. The indisputable fact is that one is answerable to the criminal law for killing an unborn child who to that end is regarded as *in esse*, and the further fact is that the unborn child, so far as the property interests are concerned, is regarded as an entity, a human being with the remedies usually accorded to an owner. But the argument then proceeds that one must respect the rights of ownership, and, so far as a civil remedy is concerned, disregard the safety of the owner. In such argument there is not true sense of proportion in the protection of rights. The greater is denied; the one lesser and dependent on the very existence of a person *in esse* and entitled to protection is respected."

The learned justice then quotes from O'BRIEN, J., in *Walker* v. *Great Northern R. Co.* (28 L. R. Ir. 69), as follows: "'The pity of it is as novel as the case — that an innocent infant comes into the world with the cruel seal upon it of another's fault, and has to bear a burthen of infirmity and ignominy through the whole passage of life,' and he adds: 'I would not myself see any injustice in the abstract in such an action being held to lie, or in the risks of a carrier being extended to the necessary incidents of nature,' although he considered, 'on what a boundless sea of speculation in evidence this new idea would launch us.'"

Commenting upon the above language of Judge O'BRIEN, Mr. Justice THOMAS in *Nugent* v. *Brooklyn Heights R. R. Co. (supra)* aptly says: "In my view, justice should not be turned aside and wrongs go without remedies because of apprehension of what may happen in jurisprudence if it be decided that an unborn child has some rights of the person."

The court having held that the plaintiff in that case had rights of person before birth entitled to protection and giving him a right to sue the person or corporation injuring him, then took up the question of the liability of the defendant railroad as a common carrier to the plaintiff while *en ventre*

*sa mere.* Upon this question the court held that the railroad did not contract with the unborn child, and for that reason alone was not liable to the plaintiff.

While it is suggested that the language of Mr. Justice THOMAS, above quoted, is dicta, it is apparent that such is not the case, as it was necessary for the court to determine the status of the plaintiff at the time of the accident as a preliminary to the consideration of the second question, which related to the liability of the defendant based upon the contractual relations of the parties. While there is no case arising under the common law in which a plaintiff has recovered damages for a personal injury to the plaintiff's person before birth caused by an act of negligence, still the general principles upon which all negligence actions proceed and which give rise thereto do not exclude the bringing of an action such as that brought by the present plaintiff.

It is urged that this action, being at common law, cannot be maintained by reason of an absence of precedent, and that the only way in which a natural person can secure redress under such circumstances is through the intervention of the Legislature. It seems to me that that argument is without force. Most of the common law of negligence, as enunciated through judicial decisions, is of comparatively recent origin. Acts which to-day, under the decisions of our courts, are held to constitute actionable negligence, 100 years ago would have received no serious consideration by courts of justice. If it be said that the common law furnishes no precedent for such an action as that involved in the case at bar, it may also be said with equal force that by no principle of common law is such right of action denied.

The statutes of our State have provided that the willful killing of a child quick within its mother's womb by an injury committed upon the person of the mother of such child is manslaughter in the first degree. (See Penal Law, § 1050.)

For all time it has been the law that one inflicting an injury upon a woman large with child, resulting in the loss of such child, is guilty of crime and deserving of punishment. In Exodus XXI, 22–25, it is said: " If men strive, and hurt a woman with child, so that her fruit depart from her, and yet no mischief follow; he shall be surely punished, according

First Department, January, 1921.          [Vol. 194.

as the woman's husband will lay upon him; and he shall pay as the judges determine.

" And if any mischief follow, then thou shalt give life for life,
" Eye for eye, tooth for tooth, hand for hand, foot for foot,
" Burning for burning, wound for wound, stripe for stripe."

At common law the killing of a child in a mother's womb constituted homicide or manslaughter. Thus it was said in 1 Blackstone's Commentaries (at p. 130): " For if a woman is quick with child and by a potion, or otherwise killeth it in her womb; or if anyone beat her, whereby the child dieth in her body, and she is delivered of a dead child; this, though not murder, was by the ancient law, homicide or manslaughter."

And it was said by Coke in his Third Institutes (50) that if the child be born alive, and afterwards died in consequence of the potion or beating, it will be murder, and that the persons who with wicked intent administered the potion or advised the woman to take it were accessories before the fact and subject to the same punishment as the principal.

In 1 Hale's Pleas of the Crown (at p. 433) it is said: " If a woman be quick or great with child, if she take, or another give her any potion to make an abortion, or if a man strike her, whereby the child within her is killed, it is not murder nor manslaughter by the law of England, because it is not yet *in rerum natura, tho it be a great crime* and by the judicial law of Moses was punishable with death."

In 1 Wood's Institutes (11) it is said: " Life begins when an infant stirreth in the womb; for if a woman is quick with child, and killeth it in her womb, and she is delivered of a dead child, it is a great misdemeanor though not murder; but if the child is born alive, and dieth of the potion this is murder."

In *Rex* v. *Joseph Senior* (1 Moody Cr. C. 346) it was held that giving a child while in the act of being born a mortal wound in the head, as soon as the head appears, and before the child has breathed, will if the child is afterwards born alive, and afterwards dies thereof, and there is malice, be murder.

It, therefore, appears that, at common law, the taking of the life of an unborn child was a wrong against the public for which the perpetrator might be severely punished. If at

common law it be a crime to assault a mother and thereby injure an infant in her womb, it seems to me impossible to successfully argue that the infant after birth may not bring action for damages against the person responsible for injuries which the infant sustained before birth. Certainly an act which if successfully accomplished would bring about the death of the child would be a tort if such act resulted only in an injury to the body of the child *en ventre sa mere,* and did not result in death. It is inconceivable that the person guilty of the infliction of injury upon the body of an unborn child resulting in the death of such child can be prosecuted for crime, and that the child, in case it survive such injuries and lives, cannot prosecute the offender in a court of law and recover damages resulting from such tort.

Several cases are cited by the appellant which are claimed to be authority upon the proposition that the complaint in the instant case does not state facts sufficient to constitute a cause of action. Among these cases are *Dietrich* v. *Northhampton* (138 Mass. 14) and *Allaire* v. *St. Luke's Hospital* (184 Ill. 359). The *Dietrich* case was decided in 1884. The action was brought, as in this action, to recover damages alleged to have been suffered by an infant when *en ventre sa mere.* The mother slipped and fell upon a defect in a highway. The court determined that no right of action existed, Mr. Justice HOLMES saying: " Taking all the foregoing considerations into account and, further, that as the unborn child was a part of the mother at the time of the injury, any damage to it, not too remote to be recovered for at all, was recoverable by her, we think it clear that the statute sued upon does not embrace the plaintiff's intestate within its meaning."

It is to be noted that the learned justice who made the decision decided the case upon the theory that an unborn child was a part of the mother at the time of the injury, and that any damage which could be recovered by it and not too remote to be recovered at all was recoverable by the mother. But under the cases cited the reasoning of Mr. Justice HOLMES is not supported by the weight of authority, and is not in accord with the long line of decisions which hold that a child *en ventre sa mere* has a legal entity. In considering this

same point Mr. Justice THOMAS in his opinion in the *Nugent* case says: " The fact that the child was deformed and would suffer thereby would cause the mother mental pain, and even if she could recover for that, the mental pain the child would suffer and the mere fact of deformity with its consequent diminution of the value of capacities and faculties, could not be included in her recovery. * * * So, however the subject be viewed, there is a residuum of injury for which compensation cannot be had save at the suit of the child, and it is a question of grave import, whether one may wrongfully deform or otherwise injure an unborn child without making amends to him after birth. The identification of an unborn child with the mother, and the merger of its individuality in her own, would seem justly to be limited by her ability to recover full compensation for the injury done both to her and to him. In the case at bar certain of his injuries can be segregated, but she cannot represent him for the purposes of recovery for them. If, now, one should assault the mother, whereby violence would be transmitted injuriously to an unborn child, there seems to be no reason to deny him an action after his birth for his injuries."

The action of *Allaire* v. *St. Luke's Hospital (supra),* which is the other case relied on by the appellant, is not in point, and, moreover, the illuminating . dissenting opinion of Mr. Justice BOGGS reciting many of the authorities above noted robs the per curiam opinion of much of the authority which it might otherwise have. The last-mentioned case was brought to recover damages for injuries alleged to have been sustained by a child *en ventre sa mere* through the negligent acts of the hospital authorities. The mother of the child had gone to the hospital in question a few days before the expected birth of the child under an arrangement made with the hospital authorities to care for her during her confinement and thereafter during her convalescence. While at the hospital and before birth of the plaintiff the mother was injured in an elevator while being run and operated by an employee of the hospital. It is alleged in the complaint that a contractual relation existed between the hospital and the mother, and that the hospital had made certain engagements respecting the care and treatment of the mother, and that at the time the injury

occurred the mother was acting under the direction of the hospital authorities and was being taken to or from one of the rooms of the hospital where she had been directed to go for inspection or treatment.

After a careful consideration of all of the authorities above noted and those cited by the appellant's counsel, I am of the opinion that a child *en ventre sa mere* under well-established principles of law is a legal entity entitled to be protected in its person as well as in its property. For that reason it is necessary to hold that the plaintiff in the instant case has set forth a good cause of action in his complaint.

The order appealed from should be affirmed, with ten dollars costs and disbursements, with leave to the defendant to withdraw the demurrer and to answer upon payment of said costs and ten dollars costs of motion at Special Term.

LAUGHLIN and SMITH, JJ., concur; CLARKE, P. J., and PAGE, J., dissent.

CLARKE, P. J. (dissenting):

While the opinion of my brother MERRELL is very persuasive and his humanitarian views enlist my sympathy, I am of the opinion that this action is not maintainable at common law. If desirable that there should be conferred upon the unborn infant the actionable right to recover for damages occasioned by negligence while *en ventre sa mere*, there must be legislation to that effect — as there was created by Lord Campbell's Act * the right to recover damages for negligently causing the death of a human being — a right also unknown to the common law. It is admitted that there is no recorded case establishing this right of action. In *Nugent* v. *Brooklyn Heights R. R. Co.* (154 App. Div. 667), quoted from in the prevailing opinion, while Mr. Justice THOMAS argued strenuously for the existence of the right it was nevertheless denied in that case on the ground that there was no contract between the carrier and the child. There an unborn infant had suffered injury from an accident to its mother, a passenger on a car,

---

* See 9 & 10 Vict. chap. 93; Laws of 1847, chap. 450, as amd. by Laws of 1849, chap. 256, and Laws of 1870, chap. 78; now Code Civ. Proc. § 1902 *et seq.*, as amd.— [REP.

caused by the negligent starting thereof while she was in the act of alighting therefrom. The court said: "This is an action for negligence, for violation of defendant's duty as a carrier, and the defendant cannot be judged as a trespasser. Negligence is culpable failure to observe a duty owed by one to another in a particular relation, and remedy is allowed for injury therefor. What duty did the defendant as a carrier owe the unborn child? The child in its distinct entity was not a passenger, and the company owed it as a separate person no duty in the matter of safe carriage. Had it, born, been carried in its mother's arms, it would have been a gratuitous passenger, but the carrier's duty towards it would not have been thereby lessened."

I cannot follow the reasoning which would allow an action if the mother had not been a passenger and denies it because she was. The action is based, not upon the contract of carriage, but upon the tort. (See *Duncan* v. *St. Luke's Hospital,* 113 App. Div. 68; affd., on opinion below, 192 N. Y. 580.) If the unborn child is a distinct entity, if it is entitled to recover for injuries caused by negligence, I fail to see that it is not as much entitled to recover from the carrier under its obligation to carry safely as it would be from the owner of property abutting on a street with a coal hole in the sidewalk so negligently constructed or maintained that the mother in passing over fell in and was injured as well as the child. There was a failure of duty to maintain a safely covered coal hole. The child did not independently cross it and fall, but the mother who carried it did. If action lies in the assumed case, which is that at bar, I fail to see why it did not in the *Nugent* case. In each case the gravamen of the action was negligence, a failure of duty owed.

The right to recover was denied in *Dietrich* v. *Northampton* (138 Mass. 14) where a premature birth and subsequent death of the infant was caused by the mother slipping by reason of a defect in defendant's highway. Mr. Justice HOLMES, writing the opinion of the Supreme Judicial Court, said: "No case, so far as we know, has ever decided that, if the infant survived, it could maintain an action for injuries received by it while in its mother's womb."

In *Allaire* v. *St. Luke's Hospital* (184 Ill. 359), where an

unborn infant received injuries when its mother was negligently hurt during carriage in the defendant's elevator, it was decided that the action could not be maintained. The court said: " The action is not given by any statute, and if maintainable it must be so by the common law, and, therefore, the question is whether, at common law, the action can be maintained. Had the plaintiff at the time of the alleged injury, in contemplation of the common law, such distinct and independent existence that he may maintain the action, or was he in view of the common law, a part of his mother?" After reviewing the cases and stating that the right of action did not exist under the common law the court proceeded: " If the action can be maintained, it necessarily follows that an infant may maintain an action against its own mother for injuries occasioned by the negligence of the mother while pregnant with it. We are of opinion that the action will not lie."

In *Walker* v. *Great Northern R. Co.* (28 L. R. Ir. 69), cited in the prevailing opinion, JOHNSON, J., said: " As a matter of fact, when the act of negligence occurred the plaintiff was not *in esse*, and was not a person, or a passenger, or a human being. Her age and her existence are reckoned from her birth and no precedent has been found for action.   *   *   * This imputed existence *in esse* of an unborn child is a fiction of the civil law, which regards an unborn child as born for some (not for all) purposes connected with the acquisition and preservation of real or personal property   *   *   *. As the civil law prevailed in the Ecclesiastical and Admiralty courts, and also entered largely into the jurisprudence administered in the Court of Chancery, most of the authorities by which an unborn child is for its own benefit regarded as born is to be found in the decisions of those courts.   *   *   * The present is and always was a common-law action for personal injuries caused by the negligence or breach of duty of the defendants, and it lies on the plaintiff to show what was this duty of the defendants towards the plaintiff and how it arose. Negligence and duty are respectively relative, not absolute, terms. It is not contended that the duty arose out of contract   *   *   *. If it did not spring out of contract it must, I apprehend, have arisen (if at all) from the relative situation and circumstances of the defendants and plaintiff at the time

of the occurrence of the act of negligence. But at that time the plaintiff had no actual existence; was not a human being; and was not a passenger — in fact as Lord COKE says the plaintiff was then *pars viscerum matris*, and we have not been referred to any authority or principle to show that a legal duty has ever been held to arise toward that which is not *in esse* in fact and has only a fictitious existence in law so as to render a negligent act a breach of that duty."

In *Gorman* v. *Budlong* (23 R. I. 169) where a ceiling through negligence fell upon a tenant with an unborn child, whereby a premature birth and subsequent death of the child ensued, the court said: " Inasmuch as to enable the plaintiff to recover, the act, neglect or default must have been such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, the question at once presenting itself is, can one maintain an action for injuries received by him while in his mother's womb. The plaintiff has prepared an ingenious brief and lays great stress upon the acts an unborn child can do, citing many authorities and seeking an analogy to reach the conclusion to which he would have the court arrive. Unquestionably, an unborn child has many rights and privileges, but it matters not what rights and privileges it has if it had not the right, had it lived, to maintain an action for the injury alleged to have been suffered in this case." And concluded: " In our opinion one cannot maintain an action for injuries received by him in his mother's womb."

In *Buel* v. *United Railways Co. of St. Louis* (154 S. W. Rep. 71), decided as late as 1913 by the Supreme Court of Missouri, the court said: " We have not been able to find any precedent at common law establishing the right of a child injured while *en ventre sa mere*, but subsequently born alive, to bring an action thereafter for the injuries so received * * * although there must have been many occasions in the progress of society where a basis for such a suit existed if it had been thought to be maintainable," and sustained the demurrer.

In the foregoing cases all of the authorities cited in the prevailing opinion were considered, and, notwithstanding the numerous decisions in which for certain purposes an unborn

child is considered to be in existence, the basis of such holding was pointed out to be in the civil, ecclesiastical or admiralty law, and it was distinctly held that they furnished no authority for an action at common law for injuries caused by negligence to the unborn child. Thus with no cases in favor of the proposition here advanced, and the foregoing authorities from many jurisdictions to the contrary, we are asked to decide that this is a common-law action. I agree that the common law is flexible and progressive, adapting itself to the changing conditions of our common life, applying old principles to modern facts, extending the law governing stage coaches to railroads, accepting the telegraph, the telephone and the wireless, the change from horses to gasoline, and so through the wide field of invention and development. But the carriage of children *en ventre sa mere* is no new condition. It is as old as humanity itself, and to apply to that venerable and immutable fact the doctrine of adaptability to changed conditions does not appear to me to be logical. Through all the centuries of the common law no such action has been sustained. This is conclusive proof to my mind that such right of action never did and does not now exist. The appeal to establish it must be made to the Legislature and not to the courts.

The order appealed from should be reversed and the motion of the defendant for judgment on the pleadings granted, with ten dollars costs and disbursements.

PAGE, J., concurs.

Order affirmed, with ten dollars costs and disbursements, with leave to defendant to withdraw demurrer and to answer on payment of said costs and ten dollars costs of motion at Special Term.