*219 The opinion of the court was delivered by
Rogers, j.
The principal question raised by the case stated is, whether Alexander, who is the posthumous child of James Gray, is embraced in that clause of the will, in which the testator devises “ the one, full, equal, undivided third part of his estate, real and personal, to his beloved children, who may be living at the time of his death.”
It seems to be a settled rule of the English law, that there must be a concurrence of a subsequent marriage, and a subsequent child, to make a revocation of a will; and that the mere subsequent birth of children, unaccompanied by other circumstances, would not amount to a presumed revocation. This being a fixed rule of construction; or, at least, the better opinion being as above stated, the legislature of Pennsylvania, as early as the 4th of February, 1748, enacted, “ that when any person shall, at any time hereafter, make his last will and testament, and afterwards marry, or have a child, or children, not named in any such, will, and die, although such child, or children be born after the death of their father, every such person, so far as shall regard the wife after married, or the child or children after born, shall be deemed and considered to be intestate; and such wife, child, or children, shall be entitled to like purparts, shares and dividends, of the estate, real and personal, of the deceased, as if he had actually died without will.” This act has been altered and supplied by the act of the 19th of April, 1794. It is there enacted, “ that when any person, from and after the passage of the act, shall make his last will and testament, and afterwards marry and have a child, or children, not provided for in any such will, and die, leaving a widow and child, or either a widow or child, although such child or children be born after the death of their father, every such person, so far as shall regard the widow, or child, or children, shall be entitled to such purparts, shares, and dividends, of the estate, real and personal, of the deceased, as if he or she had actually died without any will.”
■ I have recited the two acts, in some measure with a view to a variance, which appears between them, which, whether essential or otherwise, may be, as may be hereafter determined. The acts vary in two particular’s. The act of 1748, speaks of children not named in the will; the act of 1794, of children not provided for in the will; the act of 1794, says, if he shall die, “ leaving a widow, or child, or either widow or child,” a clause not contained in the act of 1748. But whether these acts essentially differ from each other or not, yet it is certain they make a material.alteration in the common law, which requires both marriage and the birth of a child, or children, to effect an implied revocation of a will.
This, then, being the rule of the English law, which in many cases operated hardly on after born children, the court naturally *220 strained the construction of phrases in a will, so as to include children in ventre sa mere; and here, it has been repeatedly held, that the words, “ living at the death of the testator,” although not the natural import of the term, will, without more, embrace the case of a posthumous child. The rule results from a principle, deduced from the equitable rule of the civil law, which declares, that infants, who are, as yet, in their mother’s womb, are considered as already brought into the world, whenever the question relates to any thing which may turn to their advantage. The rule is intended entirely for the benefit of the infant, and is'clearly stated by Swinburne, 562, pt. 4, s. 14. “ When the child,” (as is there said,) “ is in the mother’s icomb, at such time as the testator dieth, if we would in this case know, whether that man is to be judged to have died without issue, we must consider whether jt be for the benefit of the child, that the father should be accounted to have died without issue or not; for, howsoever the rule be; that he is not said to die without issue, whose wife is with child at his death ; yet that rule ought to take place, when it tendeth to the benefit of the child, not when it tendeth to the prejudice, of the child, or any benefit of another. Wherefore,” (says the writer;) “ if the testator make thee his executor, or give thee one hundred pounds; if he die without issue, after which will was made, he dieth, leaving his wife with child; in this case he is reported to die without issue; and so thou art admitted to the ex-ecutorship, and mayest receive thy legacy; unless it be moré beneficial to the child that his father should have been reputed to haye died without issue; for then thou are excluded.”
The principle as above stated, although not engrafted into the Common Law without jealousy, may now be taken as firmly established. The rule unquestionably is; that an infant in ventre sa mere, shall be considered, generally speaking, as born for all purposes; for his own benefit. Watk. Law of Descents, 142. Doe v. Clark, 2. H. Bl. 401. 1 Ves. 85, Miller v. Turner. 3 Br. C. Rep. 391, Hall v. Chapman. Smith v. Duffield, 5 Serg. & Rawle, 40, and a variety of other cases, which I am not permitted to cite.
The inquiry will then be, is it the interest .of Alexander to take under the will l and it is clear that it is not. By the act of 1794, before referred to, if the father be deemed and construed, to have died intestate so far as regards him, he will be entitled to oné-third of two-thirds of the' estate. Now the case stated, supposes the testator to have died worth about 36,000 dollars, we will say personal estate, for even if part were real, it will make no material difier'ence on the result. Of this sum, Alexander’s share will be $ 8,000, -if divided on the principles of the intestate laws; whereas, if he be construed to bed devisee under the will, he will be entitled to 4,000 dollars, merely. And, besides, this construction would not only be to his prejudice, but it would injure his brother and sister, who, in *221 thé view we have taken of the case, will be entitled to $ 4,666, in* stead of $4,000.
A reason given in some of the cases; for including children, id ventre sa mere, in the words “'living at the death,” is from the presumed intention of the testator, arising from the moral obligation of a parent to provide for his offspring, a reason hardly applicable to a case liké the present, where the law has made so ample a provision, in favour of the posthumous child; It would seem, therefore, that the rule ought to be in this state, that an infant in ventre sd mere, shall not be taken to be etabra'ced, prima facie, within these words; and particularly when it works an injury to the'other children, unless it can be affirmatively shown, that it is for his benefit, br there may be other circumstances in the will, which clearly indicate such to be the intention of the testator. But be this as it may, yet the rule being adopted on a presumed intention of the testator, the presumption, like every other presumption; may be rebutted by other parts of the will, aided, as it may be, by the state of thé property; and the situation of the family. 5 Serg. & Rawle, 39. Swift v. Duffield.
It has been conjectured, and not without a show of reason, that the testator thought himself richer than he really was. From the devise to his collateral relatives, it would seem that -he supposed, himself worth about 60,000 dollars. This estimate of the value of his property, would leave each of his children born, 10,000 dollars; a sum, it may be, in his apprehension, amply sufficient for their education and commencement in life; but if he had had an idea that his' wife was then pregnant, it is thought he would not have made a will by which the provision for his children born, would be materially reduced. But there are other parts of the will which are entitled to” weight in arriving at the intention of the testator; which, after all, is the governing rule. Several circumstances have been relied on at the bar, which would seem to indicate that an after born child was not in the contemplation of the testator, at the time he made his will. I shall advert to but one, although the others seem to throw some light on the transaction. After the devise to his children, the testator proceeds; “ And it is my desire and will, that the share or part of my personal estate, herein devised to my children, shall be put out at interest, and managed by my executors hereinafter named, to the best advantage, until my said children shall attain to full age, or be married; the income and interest to be paid over to their guardians hereinafter named; and as to the real estate hereby devised, the same is to be subject to the power of sale hereinafter directed ; and the said income of the real estate herein devised to my children, so long as it shall remain unsold, shall be received by my executors, and paid over to the guardians, respectively, of my children, until they severally attain full age, or marriage.” In a subsequent part of the will, the testator says, “ Item, I constitute and ap *222 jpoint my brother-in-law, Joseph Mosher, Esq. of Lancaster county, to be guardian of the person and estate of my daughter Isabella,- and my friend, Frederick V. Krug, of this city, guardian of the person and estate, of my son, James.” This clause, would seem to be somewhat irreconcileable with the idea, that the testator was aware of the pregnancy of his wife, and intended, by the wmrds “ living at his death,” to include the child in venire sa mere,- for if that had been so, it- is probable he would have made a similar provision in reference to such an event. The conclusion would then be, that James and Isabella, for whom guardians are appointed, are children to whom the interest and income of the estate are to be paid. The words of the will are, “ the income of the real estate, herein devised to my children, so long as it remains unsold, is to be paid to these guardians,” that is, to the guardians of James and Isabella.
Supposing, then, that Alexander does not take under the will, the next question is, whether this works a total revocation of the will, or is a revocation of the will pro tanto. The legislature appears to have been very guarded, in the terms used in the acts of 1748, and 1794. The marriage or birth of a child, revokes a will, only so far as regards the widow, or child or children after born. These acts provide, that such child or children, shall be entitled to such purparts, shares, and dividends of the estate, real and personal, of the deceased, as if he or she had actually died without will. I cannot believe that if the legislature had intended that marriage or birth of a child should amount to a total revocation, they would have used this language. It was the persons only, who were not included in the will, that they intended to protect,- leaving the will, in all other respects, as it had been made by the testator. It is not to be disguised, that this will sometimes lead to difficult and perplexing questions,- and whether a total revocation would not have been a better provision may admit of doubt; but the legislature not having thought proper to do so, it is not for us, on a presumed inconvenience, to dispense with words which so clearly indicate their intention. And this would appear to be the opinion of this court, in Coates v. Hughes, 3 Bin. 498.
In that case, it was ruled, that a subsequent marriage and birth 'of a child, did not amount to a total revocation of a will. The appointment of an executor, with power to. sell, was held good, notwithstanding ; upon the principle that it amount to a revocation, pro tanto only.
The next inquiry will be, in what manner is Alexander’s share of the estate to be deducted. Alexander is entitled to one-half of two-thirds of the estate, as in case of intestacy, that is to say, taking the estate to be worth $36,000, the widow would be entitled to one-third, viz. $12,000, and the remaining two-thirds, viz. $24,000, must be divided by three, the number of children, which would make the share of Alexander $8,000. This $8,000, we are of opinion, should in the first place, be deducted from the whole amount of the estate; *223 and the remainder, viz. $28,000, should be divided into three equal portions ; one-third to the widow, one-third to the two children, Isabella, and James, and the remaining third, to the collateral relatives named in the will- We conceive that the portion allotted by the act to Alexander, must like a debt, be first paid, and the residue only remains, to answer the exigencies of the will. We are sensible that this will sometimes interfere with the intention of the testator, but this is a consequence which cannot be avoided, without dispensing with what the legislature have thought of paramount importance ; to prevent the disinherison of after born children.
From the case stated, it will appear that there will be a deficiency of assets to pay the legacies contemplated in the third class. I see nothing in the will to prevent the operation of the rule, that the abatement must be in equal proportions. The general rule is, that among legatees, who are volunteers, in their nature general, there is no preference of payment; they shall all abate together, and proportionably, in case of a deficiency of assets, to pay them all.
Since the argument of the cause, it has been stated to us by the counsel, that it has been ascertained that the testator was aware of the pregnancy of his wife. This circumstance makes no alteration in the opinion of the court.
Judgment for the plaintiff.