Mrs. Marie Haines died June 20th, 1924, four hours after the birth of her only child, Henry T. Haines, Jr. Two months before, April 20th, she executed her last will and testament, now offered for probate, in which she gave her estate to her husband. Section 20 of the Wills act (Comp. Stat. p. 5865) provides — *Page 629 
"That every last will and testament made when the testator had no issue living, wherein any issue he might have is not provided for or mentioned, if at the time of his death he leave a child, children or issue, or leave his wife enceinte of a child, or children, which shall be born, such will shall be void and such testator be deemed to die intestate."
The companion section, 21, reads:
"That if a testator having a child or children born at the time of making and publishing his last will and testament shall, at his death, leave a child or children born after the making and publishing of his said last will and testament or any descendant or descendants of such after-born child or children, the child or children so afterborn, or their descendant or descendants, respectively, if neither provided for by settlement nor disinherited by the said testator, shall succeed to the same portion of the father's estate as such child or children or descendants as aforesaid would have been entitled to if the father had died intestate, towards raising which portion or portions the devisees and legatees, or their representatives, shall contribute proportionately out of the part devised or bequeathed to them by the same will and testament."
These sections are applicable to married women. Walker v.Hyland, 70 N.J. Law 69.
The proponent, the husband, contends that a child en ventre samere is "issue living" within the meaning of section 20. This is the first time that question has been presented for decision in this state, so far as the books show, although the two sections have been in existence for more than a century (P.L. 1824p. 174; Elm. Dig. 600), and counsel say that, after diligent search, they have been unable to find any authority from other states, although many have similar statutes. The same situation must often have arisen, and the absence of judicial declaration is significant of an universal acceptance of the natural and ordinary meaning of the words "issue living" as issue born. That it was in the sense of issue born that the legislature used "issue living" is evident from the language employed in the two sections to meet the two contingencies intended to be provided for — the one, if the testator has no issue living when he makes his will; the other, where he has a child or children born. *Page 630 
By a fiction of the law adopted from the civil law a child enventre sa mere is supposed in law to be born for many purposes, but only with a single exception, when it works for the benefit of the child. Thus, it is capable of having a legacy, or a surrender of a copyhold estate made to it. It may have a guardian assigned to it, and it is enabled to have an estate limited to its use, and to take afterwards by such limitation, as if it were then actually born. 1 Bl. Com. 130. In Thelluson v.Woodford, 4 Ves. Jr. 227, Mr. Justice Bullard said: "He may be vouched in a recovery, though it is for the purpose of making him answer over in value He may be an executor. He may take under the statute of distributions. He may take by devise. He may be entitled under a charge for raising portions. He may have an injunction, and he may have a guardian." In Walker v. GreatNorthern Railway Co., 28 L.R.I. 69, Mr. Justice Johnson, speaking of the authorities, said: "These authorities appear to me to show that the doctrine, which regards an unborn child as born for its own benefit [which is the utmost limit of the doctrine], is a fiction adopted from the civil law by the courts of equity for some, but not for all, purposes, and far more seldom recognized in the courts of law." The doctrine is illustrated in Hone v. Van Schaick, 3 Barb. Ch. 488, by Chancellor Walworth thus: "Although the second son of the petitioner was not actually born before testator's death, he must have been begotten many months before that event. He is therefore to be considered as in esse at the death of the testator, for the purpose of entitling him to this legacy, as one of the grandchildren of the testator then living. For an unborn child, after conception, if it is subsequently born alive and so far advanced to maturity as to be capable of living, is considered asin esse from the time of its conception, where it is for the benefit of the child that it should be so considered." And inMarsellis v. Thalhimer, 2 Paige Rep. 35, the chancellor said: "It is at this day a well-settled rule of law relative to succession, and to most other cases in relation to infants, that a child en ventre sa mere, as to every purpose *Page 631 
where it is for the benefit of the child, is to be considered inesse. In McKnight v. Read (Pa.), 1 Whart. 213, the court, in referring to the doctrine, observed that "The rule results from a principle, deduced from the equitable rule of the civil law, which declares that infants, who are, as yet, in their mother's womb, are considered as already brought into the world, whenever the question relates to anything which may turn to their advantage. The rule is intended entirely for the benefit of the infant, and is clearly stated by Swinb. 304 § 14: `When the child is in the mother's womb at such time as the testator dieth. If we would in this case know whether that man is to be judged to have died without issue, we must consider, whether it be for the benefit of the child, that the father should be accounted to have died without issue or not. For howsoever the rule be, that he is not said to die without issue, whose wife is with child at his death, yet that rule ought to take place when it tendeth to the benefit of the child, not when it tendeth to the prejudice of the child, or only benefit to another.' `Wherefore' [says the writer], `if the testator make thee this executor, or give thee £100, if he die without issue, after which will was made, he dieth, leaving his wife with child. In this case he is reputed to die without issue, and so thou art admitted to the executorship, and mayest receive thy legacy, unless it be more beneficial to the child that his father should have been reputed to have died without [sic] issue; for then thou art excluded.' The principle as above stated, although not engrafted into the common law without jealousy, may now be taken as firmly established. The rule unquestionably is that an infant en ventre sa mere shall be considered, generally speaking, as born for all purposes, for his own benefit." Wilson v. Fritts, 32 N.J. Eq. 59; Randolph
v. Randolph, 40 N.J. Eq. 73, and Van Wickle v. Van Wickle,59 N.J. Eq. 317, are illustrations of the doctrine, although no reference is made to it. As recently as 1907 Lord Loreburn, L.C., in Villar v. Gilbey, 1 B.R.C. 568, noting in Trower v.Butts, 1 Sim. S. 181, a posthumous child was held to be included under the words "born in the father's lifetime," on the *Page 632 
ground that the construction was for the child's benefit, and that Lord Westbury, in Blasson v. Blasson, 2 De G.J. S.665, had spoken of "this peculiar rule of construction, which is limited to cases where such construction of the word `born' is necessary for the benefit of the unborn child," and that the court of appeals, in the case under review, deduced from these cases a broader rule, regardless of the circumstances whether the construction is for the benefit of the child or not, observed that the sentence quoted from Lord Westbury accurately states the rule and the limitation, and that he could not accept the rule without the limitation, because there is not authority for such a view. In that case the devisee was entitled to an estate for life if born in the testator's lifetime, to an estate tail if born afterward. He was born in the month after the testator died. It was held that inasmuch as the effect of applying the rule of construction would not be for his benefit, but absolutely to his prejudice, it had no application. Lord Atkinson, in a concurring opinion, analyses the authorities. The exception to the rule is that, where the rule against perpetuities is involved, a childen ventre sa mere at the time of the testator's death, and subsequently born, will be treated as alive at the time of the testator's death, whether it is for the benefit of the said child or not. In re Wilmer's Trust (1903), 2 Ch. 411; Villar v.Gilbey, supra. The fiction is inadmissible, because it would work a complete dishersion of the infant.
The object of the act is to guard against testamentary thoughtlessness. Stevene v. Shippen, 28 N.J. Eq. 487. And it is urged from this that the legislature intended by "issue living" to include a child conceived and not yet born as well as children born; and that where, as here, the birth of a child was imminent, and known to the testatrix, the statute is inoperative. The answer is that the legislature fixed a safer and more certain criterion, and made birth, not knowledge of conception, the test by which we are to determine that a testator's will shall stand unrevoked. The statutory rule, not the intention, governs. *Page 633 
The proponent's claim that section 20 is not applicable, because the infant is "mentioned" in the will, is not borne out by the document. That he admits, but contends, that it may be spelled out of the circumstances that the testatrix at the time she executed the will was within two months of her accouchment, and knew. He cites Pearce v. Pearce, 134 S.W. Rep. 210. The language of the statute, "wherein [the will] any issue he might have is not provided for or mentioned," confines the inquiry to an inspection of the will. The better view, as to whether an after-born child is "provided for or mentioned" in a will, is that the fact must be found in the instrument. Chicago,Burlington and Quincy Railroad Co. v. Wasserman,22 Fed. Rep. 872; Bresee v. Stiles, 22 Wis. 120; Walker v. Hall, 34 Pa. 483; Hollingsworth's Appeal, 51 Pa. 518; Carpenter v. Snow
(1898), 117 Mich. 489; Smith v. Robertson, 24 Hun 210;89 N.Y. 555.
The invalidity of the will may properly be considered on application for probate. The authorities are in conflict. See note to Conway v. Fulmer, 34 L.R.A. (N.S.) 964. The procedure was followed in In re Book, 90 N.J. Eq. 549;
reversing 89 N.J. Eq. 509. See, also, Osgood v. Breed,12 Mass. 525; Niemand v. Seemann, 136 Ia. 713.
Probate denied.