MIDDLESEX COUNTY CIRCUIT COURT.

JACOB STEMMER, Jr., BY HIS NEXT FRIEND, JACOB STEM-
MER, Sr., AND PAULINE STEMMER AND JACOB STEM-
MER, Sr., INDIVIDUALLY, AND PAULINE STEMMER
AND JACOB STEMMER, Sr., HER HUSBAND, PLAIN-
TIFFS, v. WILLIAM KLINE, DEFENDANT.

Decided December 26, 1940.

For the motion, *George L. Burton.*

*Contra, Andrew O. Wittreich.*

OLIPHANT, C. C. J.   This is an action for personal injuries
brought by Jacob Stemmer, Jr., an infant, by his next friend,
Jacob Stemmer, Sr., against William Kline, a physician, who
treated the mother of the infant prior to his birth, and for
consequential damages alleged to have been sustained by his
parents, Pauline Stemmer and Jacob Stemmer.

It is before the court, on a motion raised by the amended
answer to strike the first and second counts of the complaint
on the ground that the allegations contained therein are
insufficient in law to constitute a cause of action.   The
amended answer contains as a separate defense the following:
"The defendant will object at, on or before the trial of this
action, that the allegations contained in the first and second
counts are insufficient in law to constitute a cause of action
against the defendant and in favor of the plaintiff upon the
ground that an infant cannot maintain an action for personal

injuries sustained while *en ventre sa mere* and that the parents of such infant cannot recover consequential damages resulting from such alleged injuries."

The suit is based upon the alleged malpractice of the defendant in causing injury to Jacob Stemmer, Jr., *en ventre sa mere,* through the negligent diagnosis of the mother's condition and subsequent treatment by the administering of X-ray treatments whereby the child was severely injured and born a microsephalic and an idiot without skelital structure, sight, speech, hearing or the power of locomotion. The infant plaintiff is now five years of age.

The sole issue presented by this motion is whether an infant can recover for personal injuries allegedly sustained while *en ventre sa mere,* and whether the parents can recover consequential damages by reason of such alleged injuries.

"Life," says Blackstone, "begins in contemplation by law as soon as an infant is able to stir in the mother's womb." 1 *Bl. Com.* 129.

The law has long recognized that for all purposes beneficial to the infant after birth, an infant *en ventre sa mere* shall be considered to be born. *Doe* v. *Clarke,* 2 *H. Black.* 400. Such an infant can have a guardian appointed for it. *Long* v. *Blackhall,* 7 *Durm. & East* 100. In this state by statute, that is specifically provided for. *R. S.* 3 :7-14. An estate may be given or bequeathed to it. *Marsellis* v. *Thalhimer,* 2 *Paige Rep.* 35. By *Thelluson* v. *Woodford,* 4 *Ves. Jr.* 227-343, upon the death of the father, by the negligent act of another occurring prior to the child's birth, the latter may recover for the injury sustained. In that case it was pointed out by the court that this so called nonentity might be vouched in a recovery though it is for the purpose of making him answer in value. He may be named as an executor. He may take by devise. He may have an injunction.

In *Wallace* v. *Hodson,* 2 *Atk.* 117, Lord Hardwicke said:

"The principle reason I go upon in the case is that the plaintiff was *en ventre sa mere* at the time of her brother's death and a person *in rerum natura* so that, by the rules of common and civil law, she was to all intents and purposes a child as much as if born in the father's lifetime."

In the same case Lord Harwicke notes that under the civil law the reason for the rule is that it is necessary to adopt it *whenever it is for the benefit of the child* to be considered as born and he states the rule to be "that such child is to be considered living to all intents and purposes."

In *Doe* v. *Clarke, supra,* it is said that "wherever such consideration would be for its benefit, a child *en ventre sa mere* shall be considered as absolutely born." Mr. Justice Buller in *Thelluson* v. *Woodford, supra,* says, "Why shall not children *en ventre sa mere* be considered as generally in existence? They are entitled to all the privileges of other persons."

After citing many of the above cases Judge Thomas in *Nugent* v. *Brooklyn Heights Railroad Co., sequi,* said: "It is repeating arguments several times advanced in this connection to say that an unborn child has, conditioned upon its birth, usual rights of property and the remedies that pertain to them for actionable injuries inflicted before its birth. The being that owns is the supreme consideration and has capacity for ownership. What is owned and the right to own are merely incidental to the living entity. And yet shall the incidents be valued in legal cognizance and the owner not?"

Vice-Chancellor Backes in *Re Haines' Will,* 98 *N. J. Eq.* 628; 129 *Atl. Rep.* 867, said: "By a fiction of the law adopted from the civil law, a child *en ventre sa mere* is supposed in law to be born for many purposes, but only with a single exception, when it works for the benefit of the child." The exception mentioned is that where the rule against perpetuities is involved.

While this was a case in equity, there is no reason why the same rule should not apply at law and it cannot be argued that a right of action to recover for prenatal injuries is not for the child's benefit.

If the mother be quick, the child was at common law a separate entity entitled to the recognition and protection of our courts.

In our own state at common law such a child was recognized as a "person." It is evidenced by the decision of the Supreme Court in *State* v. *Cooper,* 22 *N. J. L.* 52. The

question there was whether an attempt to procure an abortion, the mother not being quick with child, was an indictable offense at common law. The court answered it as follows: "We are of the opinion that the procuring of an abortion is not an indictable offense *unless the mother be quick with child.*" The court said that "at common law there was a well settled distinction between the condition of the child before and after the mother is quick. *In contemplation of law* life commences at the moment of quickening, at that moment when the embryo gives the first proof of life in the mother, no matter when it first received it." Quoting from 1 *Hawk, B. 1 C.* (at *p.* 31, § 16), it said: "It was anciently holden that the causing of an abortion by giving a potion to, or striking a woman big with child was murder, but at this date it is said to be a great misprison only, and not murder, unless the child be born alive and died thereof."

In *State* v. *Murphy,* 27 *N. J. L.* 112 (at *p.* 114), the court said that at common law the procuring of an abortion was an offense only against the life of the child as a result of which the law as contained in the first clause of the supplement to the act for the punishment of crimes was passed.

The perfect answer and unanswerable argument in the determination of the problem presented here, a problem in the law of torts is the application of the criminal law in offenses committed against an infant *en ventre sa mere.*

Assault and battery is an integral, a component part of murder. Murder by force cannot be committed without there being an assault and battery. If it is an offense under the criminal law to assault and batter a child *en ventre sa mere,* that crime ripening into murder if the child is born alive and later dies as the result of its prenatal injuries, it in all justice and logic must be said that that child has a right of action after its birth for prenatal injuries inflicted upon it by the wrongdoer, a *tort feasor,* and that it should be allowed to recover if possible, if proper, damages resulting from such tort, for the injuries caused by that assault and battery. Assuming as it must be assumed, that an indictment for assault and battery would lie, certainly a right of action sounding in damages for that tort should be allowed. It is

no answer to say that the punishment of crime is for the public benefit, while the remedy in tort is for private redress.

It is said that the great weight of authority is against the right of recovery for an alleged tort committed against a child *en ventre sa mere*. It is true that the majority of the decided cases are for that proposition, but to my mind the weight of authority holds for the right of recovery, and I believe the more potent reasoning is found in the opinions holding for the existence of a right of action.

Let us examine the cases which it is claimed hold against a right of action. The first reported on the subject is that of *Dietrich* v. *Northampton*, 138 *Mass.* 14, decided in 1884. It was determined on a statutory construction. Mr. Justice Holmes held that an unborn child was part of the mother and any damage to it, which was not too remote, was recoverable by her and that the statute sued upon did not embrace the plaintiff's intestate within this meaning. Further, in this case the child did not survive its premature birth.

In the year 1890, the Supreme Court of Ireland decided the case of *Walker* v. *Great Northern Railway Co.*, 28 *L. R. Ir.* 69. It was not determined on the question presented here but solely on contractual relationship.

The case of *Allaire* v. *St. Luke's Hospital et al.*, 184 *Ill.* 359; 56 *N. E. Rep.* 638, was decided in 1900. This case is cited as an authority in almost every case thereafter reported on the subject. The court said: "This action is not governed by any statute and if maintainable it must be so by the common law and therefore the question is whether, at common law, the action can be maintained." It must be noted in considering this case that the complaint alleged a contractual relationship between the mother of the child and the defendant. The court's decision was not unanimous and the logical and forceful dissenting opinion of Mr. Justice Boggs has likewise been quoted in most every case thereafter. In the course of his decision he said that a cause of action should accrue to every child capable at the time of injury of being born viable for injuries received *en ventre sa mere*, where the defendant knew or ought to have known of its existence at the time of the injury.

The reasoning of the majority opinion is that the court lacked authority, it would create practical inconvenience and possible injustice; that the child had no separate entity apart from the mother, and therefore no duty of care was owed to it; that there was no person or human being *in esse* at the time of the accident. It held that at common law the action could not be maintained. Mr. Justice Boggs held the action could be maintained and said: "If in delivering a child an attending physician acting for compensation should wantonly injure the limbs of the infant and thereby cause the child, although alive and living, to be maimed and crippled in body or members, it would be abhorrent to every impulse of justice or reason, to deny to such a child a right of action against such physician to recover damages for the wrongs and injuries inflicted by such physician." This reasoning is unanswerable.

The case of *Gorman* v. *Budlong*, 23 *R. I.* 169; 49 *Atl. Rep.* 704, was based on the decisions in *Dietrich* v. *Northampton, supra,* and *Walker* v. *Great Northern Railway, supra.* The next case is that of *Nugent* v. *Brooklyn Heights Railroad Co.,* 154 *App. Div.* 667; 139 *N. Y. Supp.* 367, decided in the year 1913. The court did not decide the case on the question of the rights of a child *en ventre sa mere.* However, Mr. Justice Thomas said: "Justice should not be turned aside and wrongs go without remedies because of apprehension of what may happen in jurisprudence." His comment was made because of the language used by Mr. Justice O'Brien in *Walker* v. *Great Northern Railway Co., supra.* Here the findings of the court were based again on the question of a contractual relationship. The case in effect decides that a child *en ventre sa mere* has a right of recovery. At the outset of the opinion Mr. Justice Thomas says that he is confronted with two questions, (1) has a child *en ventre sa mere* the right of recovery?; (2) what liability or duty did the defendant railroad as a common carrier owe to the plaintiff while *en ventre sa mere?* On the first question he decided that a child *en ventre sa mere* has a good legal cause of action but in the case before him, that principle did not apply because the railroad had no contract with the unborn child

for its safe transportation, and for that reason alone it was not liable to the plaintiff.

In the same year the case of *Buel* v. *The United Railways Co.*, 248 *Mo.* 126; 154 *S. W.'Rep.* 71, was decided. The action was brought under the Damage act of Missouri and the court construed that act as not encompassing such an action, there being no right of action at common law, but the case does say that "in all the cases the right of a mother to maintain an action for a negligent injury to herself and her unborn child is conceded. The only question is whether a dual right exists."

The case of *Lipps* v. *Milwaukee,* 164 *Wis.* 272; 159 *N. W. Rep.* 916, was determined on the precedent established in *Allaire* v. *St. Luke's Hospital, supra,* and the case of *Dietrich* v. *Northampton, supra,* which opinion, I believe, was misconstrued, but the opinion is very enlightening and makes this significant statement: "Very cogent reasons may be urged for a contrary rule, where the infant is viable and especially so in cases where the defendant being a doctor or midwife, has negligently injured an unborn child. As to such cases, we express no opinion."

In the year 1921, we have the decision in *Drobner* v. *Peters,* 186 *N. Y. Supp.* 278. It was decided upon a demurrer to the declaration or complaint, the basis of the demurrer being that a child *en ventre sa mere* could not recover. The Appellate Division in its opinion by a vote of three to two upheld the right of the child to maintain such a cause of action. That decision was written by Judge Merrill and is, I believe, the best, the most logical and cogent opinion yet written on the subject.

The Court of Appeals reversed the Appellate Division and it is interesting to note that Mr. Justice Cardozo, then a member of that court, dissented, but without opinion.

Mr. Justice Pound who wrote the opinion for the Court of Appeals said:

"Modern tendency to decide cases is to ignore fiction and deal with things as they are * * *. The injuries were, when inflicted, injuries to the mother. No liability can arise therefrom *except out of a duty disregarded* and defendant

owed no duty or care to the unborn child in the present case except from the duty of injury of the mother." (Italics mine.)

Even if one agrees with that reasoning could Mr. Justice Pound have applied it to the case *sub judice?* In the case here the defendant was called on to treat and care for a woman and her unborn child. It is claimed that through his negligence that child was injured. If true what else was it but a duty disregarded?

The case of *Stanford* v. *St. Louis-San Francisco Railroad Co.* (1926), 214 *Ala.* 611; 108 *So. Rep.* 566, took practically all of the cases we have heretofore mentioned and cited them as authority for the proposition that a child *en ventre sa mere* cannot recover in negligence cases, but says that the mother might recover for any damages to the child not too remote.

A few years later the Alabama Court again in the case of *Birmingham Baptist Hospital* v. *Branton,* 118 *So. Rep.* 741, said:

"This court has established a general line of demarcation between the civil rights of the mother and child to be born. It is concurrent with separate existence of the mother and child by birth; and prenatal injury before the birth is no basis for an action for damages by the child or its personal representative. The mother of an unborn child may recover damages to her *and it en ventre sa mere* if such injury and damage is not too remote."

It was apparently the thought of the court in these cases that there was a great deal of injustice in denying the right to a child *en ventre sa mere* to recover for personal injuries. It appears that they tried to open the door to adjust claims for prenatal injury but instead of holding that the child had a separate right of action, they tried to work out a solution by allowing the mother to recover in her own right for the injuries to the child. This was likewise the reasoning of Mr. Justice Holmes in *Dietrich* v. *Northampton, supra.*

The case of *Magnolia Coco-Cola Bottling Co.* v. *Jordan,* 76 *S. W. Rep.* (2d) 944, held against a right of action on the ground that the child was not *in esse* at the time of the accident, and therefore, was not capable of being owed a duty by the defendant.

*Smith* v. *Luckhardt,* 19 *N. E. Rep.* (2d) 446, is the only case I have discovered wherein recovery is sought because of the alleged malpractice of a physician. The court held on the basis of the authority of the cases heretofore cited that no cause of action existed in a child for prenatal injuries. The decision does not consider the question of a duty owed to the infant by the defendant doctor. It makes no distinction between *tort feasors* who know or should know and those who do not and are not charged with knowing of the existence of the child in the mother's womb. The decision held that no case has ever decided that if the infant survived it could maintain an action for prenatal injuries. I cannot subscribe to that statement. The cases of *Dietrich* v. *Northampton, supra; Gorman* v. *Budlong, supra,* and *Buel* v. *United Railways Co., supra,* were decided on the ground that the statute under which the actions were brought did not embrace a cause of action under the facts as alleged. The cases of *Walker* v. *Great Northern Railway Co., supra,* and *Nugent* v. *Brooklyn Heights Railroad Co., supra,* based their decisions on the contractual relationship existing between the parties. While both cases discussed the question, the Walker case left it open while the Nugent case as heretofore stated affirmatively decided that the child *en ventre sa mere* has a legal cause of action.

By a very late case, *Berlin et al.* v. *Penny Co., Inc.,* in an opinion rendered October 28th, 1940, the Supreme Court of Pennsylvania holds that no action can be maintained by an infant for injuries sustained *en ventre sa mere* on the authority of *Drobner* v. *Peters, supra; Dietrich* v. *Northampton, supra; Allaire* v. *St. Luke's Hospital, supra,* and *Ryan* v. *P. S. C. T.,* 14 *Atl. Rep.* (2d) 52.

The court said: "It is true that the unity of mother and child has been relaxed in modern times, and that to-day for some beneficial purposes, a child *en ventre sa mere* is considered as born."

It is my judgment that for *all* beneficial purposes a child should be considered as born. It is without question to its benefit to allow it to maintain a right of action in cases founded on a tort when it is injured through the negligence of another.

In each of the opinions holding against the right, the writer seems to strain at the leash in an endeavor to break the bonds which he imagines bind him to the doctrine that a child *en ventre sa mere* has no separate being, no entity apart from the mother in civil law in the field of torts. Why is there this restraint when in every other field of the law a child has a separate being, is a person, if being in that category is for its benefit?

I think the answer is to be found in the opinion in *Walker* v. *Great Northern Railway Co., supra,* where Judge O'Brien says, "On what boundless seas of speculation of evidence this new idea would launch us."

Since that decision and most of the others cited, medical science has progressed by leaps and bounds. The field of speculation in this type of case has been greatly diminished. Until a comparatively few years ago X-ray and radium and their uses were hardly known.

We come now, in addition to what has already been said, to a resume of those cases and authorities in support of the right of action.

1 *Bevin on Negligence* (4*th* ed.) 75, in discussing the case of *Darley Maine Colliery Co.* v. *Mitchell,* 11 *App. Cas.* 127, recites:

"An injury has not occurred until it is known to be an injury. The wrongful act of the railroad company produced its injury on the birth of the child and even if the right of action was not vested before, it became so then, there being a breach of the duty of the company not to be negligent, followed at birth with damage to the plaintiff, who was free from fault."

See, also, *Frey, Injuries to Infants en ventre sa mere* (1927, 12 *St. Louis L. Rev.* 85); *Kerr, Action by Unborn Infant* (1905), 61 *Cent. L. J.* 364; *Morris, Injuries to Enfants En Ventre Sa Mere* (1904), 58 *Cent. L. J.* 143; *Straub, Right of Action for Pre-Natal Injuries* (1930), 33 *Law Notes* 205.

While the opinion in *Kyne* v. *Zuckerman,* 4 *Penn. Dis. and County Rep.* 1924, 227, is that of a court of inferior jurisdiction, it is well written and the matter is well digested. The court held that "It may be conceded that the weight of

authority, from the standpoint of numbers, is against the existence of a right of action in such a case as this. On the other hand, we have been impressed by the cogent arguments of those decisions which sustain the right of recovery and are of the opinion that this view is supported by the more potent reasoning."

We have also the strong dissenting opinion of Mr. Justice Boggs in the Allaire case, the Nugent case, the decision of the Appellate Division in the Drobner case, the Kyne case and the Montreal Tramways case.

The Supreme Court of the Dominion of Canada in 1933 held that a child could recover for injuries sustained while *en ventre sa mere*. This case, *Montreal Tramways* v. *Leveille*, 4 *Dominion Law Reports* (1935, *p.* 337), was determined upon the construction of article 1053 of the Civil Law Code of the Province of Quebec, which reads as follows: "Every person capable of discerning right from wrong is responsible for the damage caused by his fault to *another*, whether by positive act, imprudence, neglect or want of skill."

In the opinion, Mr. Justice Lamont spoke as follows:

"To the company's contention that an unborn child being merely a part of its mother had no separate existence and, therefore, could not maintain an action under article 1053, C. C., the answer, in my opinion, is that, although the child was not actually born at the time the company by its fault created the conditions which brought about the deformity to its feet, yet, under the civil law, it is deemed to be so if for its advantage. Therefore when it was subsequently born alive and viable it was clothed with all the rights of action which it would have had if actually in existence at the date of the accident. The wrongful act of the company produced its damage on the birth of the child and the right of action was then complete. The separate existence of an unborn child is recognized even at common law, for it is well established that if a person wrongfully causes injury before its birth which results in the child's death, after it has been born alive, such person will be guilty of a criminal offense although the wrongful act was directed solely against the mother. *Rex.* v. *Senior*, 1 *Mood. C. C.* 346; 168 *E. R.* 1298; 1 *Russell on Crimes* (*8th ed.*) 622.

"It was, however, urged that there is no true analogy between crime and tort, as the punishment of crime is for the public benefit, while the remedy in tort is for private redress. While in some cases there may be no analogy yet there are, in my opinion, many cases in which crime and tort are merely different aspects of the same set of facts and in which there is so close an analogy that something more than the bare denial of it is necessary to carry conviction. The wrongful act which constitutes the crime may constitute also a tort, and, if the law recognizes the separate existence of the unborn child sufficiently to punish the crime, it is difficult to see why it should not also recognize its separate existence for the purpose of redressing the tort.

"If a child after birth has no right of action for prenatal injuries, we have a wrong inflicted for which there is no remedy, for, although the father may be entitled to compensation for the loss he has incurred and the mother for what she has suffered, yet there is a *residuum* of injury for which compensation cannot be had save at the suit of the child. If a right of action be denied to the child it will be compelled, without any fault on its part, to go through life carrying the seal of another's fault and bearing a very heavy burden of deformity and inconvenience without any compensation therefor. To my mind it is but natural justice that a child, if born alive and viable, should be allowed to maintain an action in the courts for injuries wrongfully committed upon its person while in the womb of its mother.

"The other matter to which we were asked to give serious consideration was the practical inconvenience and possible injustice to which the company might be exposed if it were held that this right of action could be maintained. It was urged that to so hold would open wide the door to extravagance of testimony and lead, in all probability, to perjury and fraud. I am not apprehensive on this point for, although in certain cases special care will be required on the part of the judge in instructing the jury, I feel quite confident that the rules of evidence are adequate to require satisfactory proof of responsibility and that the determination of the relation of cause and effect will not involve the court in any greater difficulty than now exists in many of our cases.

"For these reasons I am of opinion that the fiction of the civil law must be held to be of general application. The child will, therefore, be deemed to have been born at the time of the accident to the mother. Being an existing person in the eyes of the law it comes within the meaning of "another" in article 1053, and is, therefore, entitled through its tutor to maintain the action."

It can readily be seen then that there is no such thing as a great weight of authority holding against the proposition before me. The courts have been progressively moving toward a just solution of the problem, particularly, where as a result of negligence prenatal injuries can be traced with a reasonable degree of certainty and more particularly still when there is a duty disregarded. As said in the Leveille case, medical science has already reached this stage. It is unquestionably the tendency of the more modern legal minds and authorities to allow a recovery where the element of causation is not too remote, but direct, and the facts are not too conjectural or dubious, and readily susceptible to competent and cogent proof. It might well be that upon the trial of an issue involving this principle that if negligence was proved in a particular case, the injuries or damage might be too remote or speculative to permit the case to go to a jury.

The only decision in this state directly dealing with the question before me is the recent one of Judge Barbour in *Ryan* v. *Public Service,* 18 *N. J. Mis. R.* 429; 14 *Atl. Rep.* (*2d*) 52. The facts in that case were quite different from those exhibited here. It is predicated upon the opinion of Mr. Justice Holmes in the Dietrich case, *supra.* In addition to what has already been said concerning that case, it contained the following passage: "No liability can arise therefrom except out of a duty disregarded and the defendant owed no duty of care to the unborn child in the present case apart from the duty of avoiding injuring the mother. Strong reasons of public policy may be urged both for and against allowing the new right of action. The conditions of Negligence law at the present time do not suggest that the reasons in favor of recovery so far outweigh those which may be advanced against it as to call for judicial legislation on the question."

Even if it could be said that the conditions of the Negligence law at that time were not in favor of recovery and that in the usual negligence case injuries inflicted on a child *en ventre sa mere* are too remote to allow a recovery, could that reasoning be followed where the charge is based on malpractice? In a case such as the instant one, defendant was on notice that he might or might not be dealing with a child *en ventre sa mere*. Is the law such that he can then act negligently and escape all consequences? I do not believe the conditions of the Negligence law at the present day favor such a result, but that the reasons in favor of recovery so far outweigh those that may be advanced against it that the time has come to judicially determine such to be the law.

Lord Mansfield said "The law of England would be an absurd science were it founded upon precedent only."

The well being and health of our children are of at least as much importance and in need of care and the protection of our courts as is their rights in property or under the criminal laws.

The law cannot to survive be stagnant. It cannot be a dead thing. It must be alive. It must progress as civilization progresses. It must keep abreast of the other arts and sciences in order to justify its existence.

While I am inclined to the general principle that the fiction of the civil law should be held to be of general application and that a right of action accrues to a child when delivered alive from its mother for injuries received while *en ventre sa mere*, I am not now called upon to determine that broad question.

I do conclude, however, that where as here the defendant is a doctor, and he knew or should have known of the existence of the child, that he owed a duty to that child, and if that duty was disregarded and through his negligence the child was injured while the mother was quick, if it is born viable, an action should lie on behalf of the child for the damages occasioned it and for any consequential damages resulting therefrom to its parents.

The motion will be denied.